SALMON STERN v. EDWARD B. SAWYER ET AL.

January Term, 1905.

Present: ROWELL, C. J., TYLER, MUNSON, START, WATSON, HASELTON, and POWERS, JJ.

Opinion filed June 6, 1905.

*Landlord and Tenant—Lease—Sureties—Sale by Lessor of Part of Leased Premises—Waiver by Lessee of Lessor's Breach of Covenant to Repair—Effect on Contract of Suretyship.*

Where premises are leased for a term, the lessor cannot, by sale and conveyance, disturb the lessee in his possession and enjoyment during the term, but can only convey his reversionary interest, and upon such conveyance the rent passes to the purchaser as an incident to the reversion.

The contract of suretyship is *strictissimi juris.* To the extent, and in the manner, and in the circumstances pointed out in his obligation the surety is bound, and no further; and any change in a contract for the fulfilment of which a surety is bound, made between the debtor and creditor, without the consent of the surety, whether prejudicial to him or not, discharges the surety.

The plaintiff, by a lease under seal executed by him and the lessee, leased his hotel with its furniture and fixtures and certain land connected therewith for a stated term at a monthly rental, and

covenanted to furnish the hotel and put it in good repair. It was covenanted that the plaintiff might sell the property during the term on six months' notice to the lessee. The defendants at the same time executed on the back of the lease a sealed agreement whereby they became sureties for "the punctual payment of the rent and the performance of the covenants in the above agreement" by the lessee. The lessee took possession of the property before the hotel was repaired and furnished. During the term the plaintiff, with the consent of the lessee, and under an agreement with him that the lease should in no way be affected thereby, but without notice to the defendants, sold a portion of the land leased to a man who built a livery barn thereon. *Held*, that the plaintiff's reservation of the right to sell the entire hotel property on six months' notice to the lessee did not justify the sale of a part thereof without the consent of the sureties, and that such sale discharged the sureties, regardless of whether they or the lessee were prejudiced thereby.

The fact that the lessee took possession of the hotel without its being repaired and furnished according to the covenant, and thereby waived its breach, did not bind the sureties. By thus waiving the breach of that covenant, the lessee took possession of the hotel under a different contract than the one the performance of which on his part, was guaranteed by the defendants, and they were thereby discharged.

COVENANT on a contract of suretyship. Pleas, *non est factum* with notice thereunder, and six special pleas in bar. Heard on a general demurrer to each plea, and on a motion to dismiss the notice at the December Term, 1904, Caledonia County, *Tyler*, J., presiding. Without hearing and strictly *pro forma*, demurrers overruled, pleas adjudged sufficient, and motion to dismiss the notice overruled. The plaintiff excepted. The opinion states the case and the substance of the pleas and notice.

*May & Hill*, and *Young & Young* for the plaintiff.

An actual eviction of a tenant from part of the premises leased will not bar the landlord's action for rent, but results

only in an apportionment of the rent unless the tenant consents to surrender the part, and agrees to pay full rent. 18 Am. & Eng. Enc. of Law, 2nd Ed. 625; *Underwood* v. *Blanchard*, 47 Vt. 305; *Knapp* v. *Marlboro*, 34 Vt. 235; Rawle on Covenants, 167; *Bayton* v. *Morgan*, 22 Q. B. D. 74; *Worthington* v. *Cook*, 56 Md. 51; *Ehrman* v. *Mayer*, 57 Md. 612; *Smith* v. *Pendergast*, 26 Minn. 318; *Daniels* v. *Richardson*, 22 Pick. 565; *Reed* v. *Ward*, 22 Pa. St. 144; *Linton* v. *Hart*, 64 Am. Dec. 691; *Farley* v. *Craig*, 11 N. J. L. 262; *Dewitt* v. *Pearson*, 112 Mass. 8.

*Dunnett & Slack* for the defendant.

The sureties were discharged by the sale by the plaintiff of part of the premises leased. *Page* v. *Krekey*, 137 N. Y. 307, 33 Am. St. Rep. 731; *Rees* v. *Berrington*, 2 Ves. Jr. 540; *Eyre* v. *Bartrop*, 3 Madd. 221; *Calvert* v. *The London Dock Co.*, 2 Kee 638; *Rees* v. *U. S.*, 9 Wall. 13; *Polak* v. *Everett*, 12 Q. B. D. 669; *Holme* v. *Brunskill*, 3 Q. B. D. 495; *Miller* v. *Stewart*, 9 Wheat. 681; *U. S.* v. *Boecker*, 21 Wall. 652; *Board of Comrs.* v. *Branaham*, 57 Fed. 179; *Dobbin & Adams* v. *Bradley*, 17 Wend. 422; *U. S. Glass Co.* v. *W. Va. etc. Co.*, 81 Fed. 993; *U. S.* v. *Ulrici*, 111 U. S. 38; *Whitcher* v. *Hall*, 11 E. C. L. 214; *Warren* v. *Lyons*, 152 Mass. 310; *Bank of St. Albans* v. *Smith*, 30 Vt. 148; *Corlies* v. *Estes*, 31 Vt. 653.

TYLER, J. On March 19, 1902, the plaintiff executed and delivered to F. N. Keeler a lease of the St. Johnsbury House, with its furniture and fixtures and a large lot of land connected with the hotel, at a monthly rental of $112.50. The plaintiff covenanted to put the hotel in good repair, to furnish it suitably and pay all the taxes and insurance. The term was to begin when the hotel was repaired and furnished and continued three or five years at the option of the lessee,

who was to quietly occupy and enjoy the property provided he kept his covenants.

The lessee covenanted that he would occupy the premises in a good husbandlike manner, pay his monthly rent and quietly surrender the premises to the lessor at the end of the term. There was a covenant that the lessor might sell the property during the term on six months' notice to the lessee, who should have the first chance to purchase; also a covenant for re-entry by the lessor for non-payment of rent. The defendants on the same day executed upon the lease the following agreement under seal:

"In consideration of the letting of the premises above described and for the sum of one dollar, I do hereby become surety for the punctual payment of the rent and performance of the covenants in the above agreement mentioned, to be paid and performed by Frederick N. Keeler, and if any default shall be made therein, I do hereby promise and agree to pay unto Salmon Stern, or his assigns, such sum or sums of money as will be sufficient to make up such deficiency and fully satisfy the conditions of said agreement, without requiring any notice of non-payment or proof of demand made."

The lessee took possession of the hotel before it was repaired and furnished, and on April 16, 1903, he executed and delivered to the lessor a writing under seal as follows:

"I, Frederick N. Keeler, of St. Johnsbury in the County of Caledonia, in consideration of one dollar paid to my full satisfaction by Salmon Stern, of Lyndon, in the County of Caledonia, do hereby freely grant permission to the said Salmon Stern to sell fifty-three feet and use six additional feet for a driveway off from the westerly part of the premises leased to me by said Salmon Stern, by his lease dated the 19th day of March, A. D. 1902; and the sale of said land and my permission hereby granted shall not in anyway whatsoever

affect the validity of the said lease, and said lease shall here-
after have the same force and effect as if said land had not
been sold."

The plaintiff immediately sold the land released to Gil-
man & Carr, who built a livery barn upon it.   Upon the
lessee's failure to pay his rent for several months the plaintiff
brought this suit against the defendants upon their agree-
ment.   The declaration is in nine counts which allege the tak-
ing possession of the hotel property by the lessor, under the
lease, April 1, 1902, his continuing in possession until the
bringing of the suit and his failure to pay the stipulated rent.
The second count alleges that he had always been in the use
and occupation of all the property leased that was of any
material value.   No question is made as to the sufficiency of
the several counts.

The defendants filed seven pleas in bar of the plaintiff's
right of recovery.   The first denied that any part of the rent
in the declaration mentioned was in arrear and unpaid and
is in effect a traverse; the second alleged that the plaintiff
failed to repair and furnish the hotel according to his covenant
in the lease; the third, fourth and fifth set out in defence that
the plaintiff, by means of the permission or release obtained
from the lessee, sold and conveyed to Gilman and Carr, with-
out notice to the defendants, the land described in said release
and the use of the six additional feet for a driveway for
$2,250; that said purchasers immediately entered into pos-
session of the land sold to them by the plaintiff; that they
have ever since occupied the same and excluded the lessee
therefrom; that offensive odors were carried from the livery
barn to the hotel to its great injury.   The third, fourth and
fifth pleas differ from each other only in the allegations of
injury to the defendants by said sale.   They all allege the
lessee's eviction from the land.

The seventh plea is *non est factum,* with a notice attached, pursuant to our statute. It states the same matters in defence that are alleged in the pleas.

The plaintiff filed a general demurrer to each plea and moved to dismiss the notice.

The question is whether any of the pleas are sufficient as against the demurrers.

The defendants contend that the release obtained by the plaintiff from the lessee without their consent or knowledge discharged them from their obligation; that they were discharged by the change in the contract by which the rent should continue the same for a part of the leased premises as it had been for the whole; that the injury that resulted to the hotel property from the erection of the livery barn effected their discharge, and that the lessee took possession under a new and oral contract with the plaintiff.

The plaintiff contends that the lessor could sell a portion of the leased premises and that the lessee's only remedy was an apportionment of the rent; but that is not the law of this case. It is true as a general proposition that a right to sell and convey is incident to the ownership of land, but where the premises are under lease for a term of years an estate for that term has been, by the act of the lessor, carved out of the fee, and the lessor cannot, by a sale and conveyance, disturb the lessee in his possession and enjoyment of the premises during the term. The lessor can only convey his reversionary interest, and upon such conveyance the rent passes to the purchaser as an incident to the reversion. As some authorities state it, the lessee is absolute owner for the term granted, while the landlord's rights are confined to his reversionary interest.

No question arises here in respect to the right of the lessor, as between himself and the lessee, to sell and convey

his reversionary interest in a part of the leased premises, nor is any question presented about apportionment of rent, for the surrender of a part of the land was freely granted by the lessee to the lessor in the written release which also contained a promise that the surrender should not affect the validity of the lease.

The only question is: How did the surrender and acceptance of a part of the demised premises from the terms of the lease affect the rights and obligations of the sureties under their covenant? Upon this subject the authorities are nearly uniform in support of the rule as laid down by Judge Story in *Miller* v. *Stewart,* 9 Wheat. 681:

"Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent, and in the manner, and under the circumstances pointed out in his obligation he is bound, and no further. It is not sufficient that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract, and if he does not assent to any variation of it, and a variation is made, it is fatal." In that case the bond of a collector of taxes, upon which the defendants were sureties, recited his appointment for eight townships. Another township was interlined and it was held that the interlineation discharged the surety for all the towns.

*United States* v. *Boecker,* 21 Wall. 652, was a suit on a distiller's bond, and there was a misdescription of the place where the business was to be carried on. It was described as on the corner of Hudson Street and East Avenue, when it should have been corner of Hudson and Third Streets in the same town. It was held that the party was not liable, and the doctrine in *Miller* v. *Stewart* was approved. The reasoning

of the Court was that the premises having been specified in the notice, the surety before signing the bond, might have examined and determined how far, in the event of liability by the principal, the property would be available as security for the government and indemnity for himself; that the surety had a right to rely upon the principal paying his rent out of the entire property; that the United States having a lien, the surety was entitled to the benefit of it. *Martin* v. *Thomas*, 24 How. 315, 16 Law. Ed., 689; *Reese* v. *United States*, 9 Wall. 13, 19 Law. Ed. 541.

*Warren* v. *Lyons*, 152 Mass. 310, is a strong case and refers to *Miller* v. *Stewart* as stating the settled rule of law upon this subject. It is also referred to as authority in the elaborate notes to *Griswold* v. *Hazard*, 141 U. S. 260, 35 Law. Ed. 678. See cases there collected. *Bank* v. *Gerke*, 6 Am. St. R. 453.

In *Page* v. *Krekey*, 137 N. Y. 307, 33 Am. St. Rep. 731, it was held that the defendant's contract as guarantor was *strictissimi juris*, that he was discharged by any alteration of the contract to which his guaranty applied, whether material or not, and that the Court would not inquire whether it was or was not to his injury.

In *Rees* v. *Berrington*, 2 Lead. Cas. in Eq. Lord Loughborough remarked in substance that he could not inquire what mischief had been done,—whether it produced inconvenience to any one, for the rule was that there should be no transaction with the principal debtor without acquainting the surety with it; that the surety only engages to make good the deficiency; that it is the clearest and most evident equity not to carry on any transaction without the privity of him who must necessarily have a concern in every transaction with the principal debtor; that he cannot be bound without being consulted,

and that he must judge whether he will give that indulgence contrary to the nature of his engagement.

In *Rees* v. *United States* it was held that any change in the contract without the assent of the sureties discharged them. The Court said: "Nor does it matter how trivial the change, or even that it may be of advantage to the sureties. They have a right to stand upon the very terms of their undertaking." See Brandt on Suretyship, 629, and cases there cited. 2 Cyc. 216; *Staver* v. *Locke,* 22 Or. 519, 29 Am. St. Rep. 621. See notes to this case and to *Gates* v. *McKee,* 64 Am. Dec. 549.

In *Holme* v. *Brunskill,* Law. Rep. 3 Q. B. D. 495, it was held that a surety for rent was discharged if the tenant surrendered part of the demised premises and the rent was thereby reduced. In *Polak* v. *Everett,* 1 Q. B. D., 669, Mellor, J. said that the question was one of contract, and the surety is entitled not to be affected by anything done by the creditor, who has no right to consider whether it might be to the advantage of the surety or not; that the surety is entitled to remain in the position in which he was at the time when the contract was entered into. Quain, J., said, "I agree with my brother Mellor, that it is a thoroughly sound and safe principle, that where the act is voluntary and deliberate, the creditor altering the contract and rendering it impossible that it should be carried out, in its original form, should suffer. This is a sound doctrine which ought not to be impeached and cannot be impeached because it is established by authority."

Brandt in § 429 cites a case like the present one. A yard, shed and frame dwelling-house were rented for $375 a month, and a stranger guaranteed the rent. The lessor took back the dwelling-house, rented it to another, and reduced the rent for the remainder of the premises to $300 a month; *held,* that the

guarantor was thereby discharged. *Penn* v. *Collins,* 5 Rob. (La.) 213.

Brandt formulates this rule from cases cited in the note to § 427: "No principle of law is better settled at this day than that the undertaking of the surety being one *strictissimi juris,* he cannot, either at law or in equity, be bound farther or otherwise than he is by the very terms of his contract. * * * Neither is it of any consequence that the alteration in the contract is trivial, nor even that it is for the advantage of the surety. * * * He is not bound by the old contract for that has been abrogated by the new; neither is he bound by the new contract, because he is no party to it; neither can it be split into parts so as to be his contract to a certain extent and not for the residue; he is either *in toto* or not at all." Many cases are cited in the note to the paragraph in support of this rule, that is said to be so firmly imbedded in the law of principal and surety that no considerations of apparent equity are permitted to disturb it, however great the hardship may be which, in individual cases, appeals for a modification of the rule. Among the cases cited are *Polak* v. *Everett, Holme* v. *Brunskill,* also, *National Bank* v. *United States,* 164 U. S. 227, 41 Law. Ed. 412.

It is not necessary to consider further the decisions of other courts for it was held in *Bank* v. *Smith,* 30 Vt. 148, that: "A change made in a contract of suretyship between the creditor and debtor, without the assent of the surety, whether prejudicial to him or not, discharges the surety." See, also, *Corlies & Co.* v. *Estes,* 31 Vt. 653, where the Court said: "It is only fair and in accordance with well understood principles, to presume that the defendant entered into his contract of guarantee in view of all the terms and provisions of the contract, and that he was becoming liable to the plaintiffs, only in respect to such rights as they might have in virtue

of a strict performance of their duties under the specific provisions of the contract, and of the failure of Davis and Rider to perform their correlative duties to the plaintiffs under the like provisions of the contract."

The plaintiff's reservation of a right to sell the entire hotel property on six months' notice to the lessee did not justify the sale of a part without the consent of the sureties. Their liability upon the lessee's covenants was based upon his occupation and use of the premises described in the lease. The lessor and lessee evidently did not have the sale of a part of the premises in contemplation when the lease was made, and it cannot reasonably be construed to have that effect. The plaintiff's evident intent was to reserve a right to sell the entire hotel property, if he had an opportunity, during the term of the lease.

It is alleged in the second count in the declaration that the lessee had had the occupancy and use of all of the leased premises that were of any use or value to him and which he had ever had occasion to use from April 1, 1902, until the bringing of this suit. The third, fourth and fifth pleas set out the release from the lessee to the plaintiff and the subsequent sale of the land released for $2,250, the truth of which allegations the demurrers admit. This brings the case within the rule stated and discharges the defendants from liability.

The lessor covenanted in the lease that he would furnish the hotel in all parts with good and suitable furniture, and put it in good repair by painting it outside and inside, papering, plumbing and making all other necessary repairs. The defendant pleads a breach of this covenant in defence of the action. The fact that the lessee took possession of the hotel without its being repaired and furnished according to the covenant and thereby waived the breach of it did not bind his sureties. It must be presumed that when the defendants be-

came sureties for the performance of the lessee's covenants they relied upon the plaintiff's performance of his covenant, which was obviously an important one for the success of the hotel and to enable the lessee to pay his rent. If the hotel had been well repaired and furnished, it is reasonable to suppose that it would have commanded a larger patronage and income than it would in a dilapidated and unfurnished condition. The lessee took possession of the hotel under a different contract than the one which the defendants guaranteed the performance of on his part, and we think that upon the authorities the defendants were thereby released. There is nothing in the case tending to show that the waiver by the lessee was with the defendant's consent or knowledge.

*The pro forma judgment is affirmed, and cause remanded.*