## McClure Newspapers, Inc. d/b/a Burlington Free Press v. Paul E. Brown

[499 A.2d 765]

No. 83-124

Present: **Allen, C.J., Hill, Underwood and Peck, JJ., and Daley, J. (Ret.), Specially Assigned**

Opinion Filed July 26, 1985

*Robert B. Hemley* and *Dennis R. Pearson* of *Gravel, Shea & Wright, Ltd.* Burlington, for Plaintiff-Appellee.

*Blum Associates, Inc.*, Burlington, for Defendant-Appellant.

**Peck, J.** This is an appeal by defendant Paul E. Brown from an order of the Chittenden Superior Court awarding plaintiff a judgment against the defendant on a surety bond. We affirm.

On appeal, defendant raises three issues for review by this Court: (1) plaintiff was estopped from asserting any liability against defendant as surety; (2) plaintiff discharged defendant as surety by altering the underlying agreement; and (3) plaintiff failed to bear its burden of proof that certain security held by plaintiff was of insufficient value to satisfy the underlying obligation.

In 1978, defendant's two stepsons entered into agreements with plaintiff under which the stepsons were to deliver newspapers purchased by them from plaintiff at prevailing wholesale rates. Under the agreements, the stepsons were obliged to pay plaintiff the balance due on Friday of each week. The defendant agreed to act as an accommodation surety on any debt owed by his stepsons. Further, both stepsons established "bond savings accounts" from which neither boy could withdraw funds without permission of both the plaintiff and defendant surety.

During the course of their relationship with the plaintiff company, the boys eventually accrued debts to the plaintiff totaling $445.34 and $937.71, respectively. In effect, plaintiff extended credit to both boys, without the knowledge of the surety. However, plaintiff never entered into a binding agreement with the

boys which impaired its right to seek payment each week on the balance due.

Finding itself unable to collect from the boys, plaintiff instituted this action against the defendant as surety for the amount owed on the underlying contracts with the boys. The superior court granted judgment for the plaintiff; defendant appealed to this Court.

## I.

Defendant first argues that plaintiff was estopped from asserting any liability against him. In order to establish that a creditor like plaintiff is estopped, the defendant, as a surety, is required to show that he suffered prejudice as a result of reliance upon misstatements or representations by the creditor. *Wilkins* v. *Hanson*, 119 Minn. 399, 138 N.W. 418 (1912); 74 Am. Jur. 2d *Suretyship* § 85; 72 C.J.S. *Principal and Surety* § 194; see *Hadlock* v. *Poutre*, 139 Vt. 124, 128, 423 A.2d 835, 837 (1980) ("No estoppel could arise . . . unless the defendants could show that they relied to their detriment on the conduct of the plaintiff.").

On appeal, defendant made no showing that he had produced evidence in the trial court of any misstatement or representation* made by the plaintiff upon which he relied to his prejudice. Without such a showing, his claim of estoppel is without merit.

## II.

Defendant argues next that since plaintiff made no effort to collect the debt owed by defendant's stepsons, as principal debtors, for several months, the plaintiff not only extended credit to them, but, in effect, increased the amount of money plaintiff could recover from the principal debtors and thereby varied the terms of the underlying contract. The defendant does not argue that the extension of credit alone altered the underlying obligation between the plaintiff and principals. Rather, he contends that the extension of credit worked to increase the sum owed by

---

\* Even if we assume that defendant's estoppel claim could be based on his detrimental reliance upon plaintiff's extension of credit to the two boys, defendant has pointed to no evidence of any reliance. In fact, defendant testified that at no time did he "have any idea" that the plaintiff extended the credit. Without knowledge of an extension, he could not have relied thereon to his detriment.

the principals and thus altered the terms of the underlying contract. He urges this Court to hold such an alteration should have discharged him as surety. We disagree. The credit extension in this case was not the product of a binding agreement between creditor and the stepsons as principals. Plaintiff was not bound to extend credit and could have brought an action on the underlying contract at any time; accordingly, surety was not released by reason of any alteration of the underlying contract.

This Court has held that any alteration of the underlying contract between creditor and principal, without a surety's assent, discharges the surety. *Stern* v. *Sawyer*, 78 Vt. 5, 14, 61 A. 36, 38 (1905). Nevertheless, in order to effectively discharge the surety, an agreement between the creditor and principal which changes the terms of the underlying contract must be a valid, binding agreement. *Bayer & Mingolla Construction Co.* v. *Deschenes*, 348 Mass. 594, 599, 205 N.E.2d 208, 211 (1965); 72 C.J.S. *Principal and Surety* § 174; 74 Am. Jur. 2d *Suretyship* § 42. The surety is not released if any agreement between creditor and debtor does not bind the creditor. *Bayer & Mingolla Construction Co., supra*; 72 C.J.S., *supra*; 74 Am. Jur. 2d, *supra.*

In our case, defendant does not contend that plaintiff and the principal debtors ever entered into a valid, binding agreement, supported by consideration, to extend credit on amounts due under the contract and thereby change its terms. As the court below concluded, plaintiff could have, at its pleasure, demanded payment at any time from the principal debtors. The underlying contract in this case was never changed. The principals had agreed to pay the plaintiff the balance due for all newspapers supplied to them. They agreed to make payments on Friday of each week. The fact that the principals failed to make such payments regularly and plaintiff did not initiate collection efforts until, in one case, some thirteen months after it could have under the agreement did not change the agreement. Throughout the period in which plaintiff effectively extended credit, neither of the principals could have avoided his initial payment obligation under the original contract. Nor could they have pointed to any binding agreement, supported by consideration, which extended credit or otherwise changed the agreement. For these reasons we hold that any extension of credit granted the principals in this case did not change the underlying agreement and therefore did not discharge the defendant from his obligation as surety.

## III.

Defendant's final argument concerns the bond savings accounts and their use as security for the debts incurred by the principal debtors. Defendant contends that these accounts served as security for the debts and that plaintiff failed to meet its burden to prove that the accounts were insufficient to satisfy the debt. *Hewey* v. *Richards*, 116 Vt. 547, 551, 80 A.2d 541, 544 (1951).

Even if plaintiff did bear such a burden of proof under *Hewey*, we hold that it satisfied its burden. The plaintiff presented evidence that one month after any carrier finishes delivering newspapers for the plaintiff, the bank which holds the accounts automatically releases any amount contained therein and credits the carriers' accounts. Further, plaintiff produced evidence that more than one month after the boys, in this case, finished delivering the newspapers under their agreement the boys owed plaintiff $445.34 and $937.71 respectively. While the plaintiff did not produce evidence as to the specific amount contained in each account, a logical inference from the evidence was adequate to prove that the total amount contained in each bond savings account was insufficient to cover the debt incurred by the boys. The court found that the boys still owed the plaintiff the amounts described above as of February 24, 1979, after which date, according to testimony, both boys would have been credited with amounts contained in the bond savings accounts. Thus, the amount contained in the accounts must have been insufficient to cover the principals' debts. Plaintiff met any burden it may have borne, by demonstrating the insufficiency of the amounts contained in the account.

*Affirmed.*

**Allen, C.J.,** dissenting. The surety here was uncompensated and, as such, his duty must be strictly construed. *Peoples National Bank* v. *Fowler*, 73 N.J. 88, 100-01, 372 A.2d 1096, 1103, *cert. denied*, 434 U.S. 858 (1977). His undertaking, being strictissimi juris, cannot be extended further than the very terms of his contract. *Stern* v. *Sawyer*, 78 Vt. 5, 14, 61 A. 36, 39 (1905). All doubts concerning the extent of such a surety's obligation are to be resolved in his favor. *Massachusetts Bonding & Insurance Co.* v. *Feutz*, 182 F.2d 752, 756 (8th Cir. 1950); *Title & Trust Co.* v.

*United States Fidelity & Guarantee Co.*, 138 Or. 467, 477, 1 P.2d 1100, 1103 (1931).

The surety here agreed to be "responsible for the performance" of his stepsons' obligations. Under the agreements between the plaintiff and each of the stepsons, the stepsons were to remit "the balance due for all newspapers supplied or delivered to the Corner on Friday of each week . . . ."

The surety could have reasonably concluded that his obligation under those conditions were limited to the monies due from the stepsons to the plaintiff for one week.

The interpretation urged by the plaintiff would impose a burden unlimited both as to time and amount. "Every person is supposed to have some regard to his own interest; and it is not reasonable to presume any man of ordinary prudence would become surety for another without limitation as to time or amount, unless he has done so in express terms, or by clear implication." *Gard* v. *Stevens*, 12 Mich. 292, 296, 86 Am. Dec. 52, 53 (1864). I would reverse.

I am authorized to state that Justice Underwood joins in this dissent.