## VERMONT NATIONAL BANK v. Steven LENINSKI and Patricia M. Leninski

[687 A.2d 890]

No. 95-587

November 13, 1996. Following a strict foreclosure, plaintiff Vermont National Bank filed an action against defendants Steven and Patricia Leninski to recover an alleged deficiency between the mortgage debt and the value of the property as measured by its sale price at public auction. Relying upon an appraisal commissioned by the bank rather than the sale price, the superior court determined that the fair market value of the property exceeded the debt and therefore no deficiency was owing. The bank appeals, contending the trial court erred by declining to treat the sale price as conclusive evidence of fair market value. We affirm.

The bank filed a two-count complaint against the Leninskis, seeking judgment on a note and an order of foreclosure on the mortgage securing the note. The mortgage covered an undeveloped parcel of land in Hartford. The bank successfully moved for summary judgment on both counts, and in August 1994, a judgment order and decree of foreclosure was entered. The order provided that if the Leninskis did not redeem the property, the bank was to recover $58,108.25, representing the amount due under the note and mortgage plus court costs, fees, and expenses.

The redemption period expired in February 1995. In the same month, the bank employed a licensed appraiser to update a previous appraisal he had made of the property. His earlier appraisal, in May 1993, had estimated the fair market value to be $67,000. As of February 1, 1995, he estimated the value to be $60,000. The appraiser was familiar with the county where the property was located and had done several hundred appraisals in the area. An expert witness who was an experienced appraiser and member of the State Board of Appraisers reviewed the bank's appraisal report and concluded that it was done in accordance with accepted standards and methodology.

In March 1995, the bank listed the property for sale with a local realtor, who offered the parcel at $59,000. The asking price exceeded the estimated value of $50,460 ascribed to the lot by the listers

for the Town of Hartford for the tax year 1995. The property remained on the market for three months, from March through May 1995; the average marketing time in the Hartford area during this period was more than six months.

In June, the Leninskis' parcel was one of eighty-six properties offered for sale at a public auction administered by the bank. Nearly all of the properties, including the Leninskis', were auctioned on an "absolute" basis, meaning that they were to be sold regardless of price. Streamlined financing was made available to bidders, who were invited to "buy at your own price." The Leninski property was sold to an adjacent landowner for $36,400. There is no record of whether others bid on the property. The buyer had previously offered to purchase the property from the Leninskis for $50,000.

Shortly after the sale, the bank filed a request to establish the outstanding judgment amount by crediting the sale price of $36,400 against the monetary judgment of $58,108.25, for a deficiency balance of $21,708.25 including interest from the date of expiration of the redemption period. Following a hearing, the court concluded that the fair market value of the lot at the time of the foreclosure was $60,000, based on the estimate of value by the bank's appraiser. The court acknowledged that sale price is commonly used to measure market value, but was unpersuaded that it represented a reliable measure under the circumstances. Specifically, as the court explained, "given the lack of information regarding the number of bidders, the ultimate purchase of the property by the adjacent landowner, but most importantly, the great disparity between the opinions of the bank officer, the real estate broker, the listers for the Town of Hartford, and the appraiser, we cannot rest on either the inference or the presumption that the sale price here was the fair market value." Weighing the merits of the various opinions of value, the court chose that of the bank's licensed appraiser as the most reliable. Accordingly, it found that the security was sufficient to cover the debt, and no deficiency was owing. This appeal followed.

In an action at law to recover an unsatisfied balance after foreclosure proceedings, the burden is on the mortgagee (here the bank) to show to what extent the mortgaged property was insufficient to pay the indebtedness. *Hewey v. Richards*, 116 Vt. 547, 551, 80 A.2d 541, 544 (1951); see also *McClure Newspapers, Inc. v. Brown*, 146 Vt. 180, 184, 499 A.2d 765, 768 (1985). In strict foreclosure actions, the deficiency is the difference between the fair market value of the premises and the debt. *Bailey v. Groton Mfg. Co.*, 113 Vt. 288, 290, 34 A.2d 182, 183 (1943). The value of the property is to be determined as of the day the decree of foreclosure becomes absolute. *Hewey*, 116 Vt. at 551, 80 A.2d at 543.

Relying on several recent property tax decisions, the bank contends the court was required to adopt the sale price as the fair market value absent evidence that the sale was "rigged" to produce a skewed value. See *Wilde v. Town of Norwich*, 152 Vt. 327, 329, 566 A.2d 656, 657 (1989) (sale price is "strong, if not conclusive, evidence" of value of property for tax appraisal purposes); *Royal Parke Corp. v. Town of Essex*, 145 Vt. 376, 378-79, 488 A.2d 766, 768 (1985) (where the evidence proves an arms length sale between willing buyer and seller "market value is perforce established for appraisal purposes"). We do not read these decisions, however, as precluding the court from examining the totality of the circumstances to determine whether an auction sale provides the most reliable evidence of market value for purposes of calculating a deficiency judgment. The court is not limited in the manner of evidence or the means that may be considered for determining market value. As we ob-

served in the tax appraisal context, although a bona fide sale may be persuasive, the law "does not prescribe the method nor limit the manner in which evidence of fair market value may be presented to the Board." *Sondergeld v. Town of Hubbardton*, 150 Vt. 565, 567, 556 A.2d 64, 66 (1988).

The court was thus within its discretion in finding that the circumstances of the auction sale made it a less reliable indicator of fair market value than the bank's own appraisal, which was contemporaneous with the final foreclosure decree. We find no error, therefore, in its determination that the bank was not entitled to any deficiency.

*Affirmed.*

**Allen, C.J.,** dissenting. The majority today holds that a court may disregard the value established by auction after strict foreclosure, even though defendants failed to demonstrate that plaintiff bank acted in bad faith or without reasonable diligence in disposing of the property. After almost a decade during which we reversed a sizeable number of tax appeals because the State Board of Appraisers or the superior court did not adequately explain its rationale, we now not only affirm such oversight, but adopt the same ipse dixit standard of explanation that we have vigorously and repeatedly criticized.

I agree with the majority that it was the bank's burden to prove the amount of the deficiency. In this case the bank met its burden by establishing the mortgage debt and presenting reasonably detailed evidence concerning the attempts to sell the property through a broker and the actual sale. Thereafter it was defendants' burden to demonstrate that the bank failed to act in good faith and with due diligence. See *Bascom Constr., Inc. v. City Bank & Trust*, 629 A.2d 797, 800 (N.H. 1993) (in foreclosure sale, mortgagee owes mortgagor duty of good faith

and due diligence); see also *West Roxbury Co-op Bank v. Bowser*, 87 N.E.2d 113, 115 (Mass. 1949) (burden is on mortgagor to prove mortgagee did not act in good faith or with reasonable diligence in exercising power of sale). "'[T]o constitute bad faith there must be an intentional disregard of duty or a purpose to injure.'" *Murphy v. Financial Dev. Corp.*, 495 A.2d 1245, 1250 (N.H. 1985) (quoting *Wheeler v. Slocinski*, 131 A. 598, 600-01 (N.H. 1926)). To determine whether a mortgagee has acted with due diligence, one must ask "'whether a reasonable man in the [lenders'] place would have adjourned the sale' or taken other measures to receive a fair price." *Id.* (quoting *Wheeler*, 131 A. at 601).

Defendants did not introduce any evidence to support their burden. There is also nothing in the trial court's decision or defendants' brief suggesting that the sale fell short of the good faith or diligence expected of it upon disposition of the property. In strict foreclosure actions, the deficiency is the difference between the fair market value of the property and the mortgage debt. *Bailey v. Groton Mfg. Co.*, 113 Vt. 288, 290, 34 A.2d 182, 183 (1943). In most cases, the sale price is the fair market value. Reporter's Notes, V.R.C.P. 80.1. If the mortgagor cannot show that the mortgagee acted in bad faith or without reasonable diligence in conducting the sale, the trial court is not entitled to disregard the sale price in determining the fair market value. See *Regional Inv. Co. v. Willis*, 572 S.W.2d 191, 192 (Mo. Ct. App. 1978) (sale price at trustee's sale is basis for measuring deficiency, provided sale was fairly conducted).

The majority cites *Sondergeld v. Town of Hubbardton*, 150 Vt. 565, 567, 556 A.2d 64, 66 (1988), for the proposition that there is not one exclusive method for determining valuation under Vermont law. *Sondergeld* is the strongest possible explanation of the majority's misstep in this case. Before the State Board of Ap-

praisers in *Sondergeld* were valuation figures provided by the State, based on actual sales. *Id.* at 567, 556 A.2d at 66. The Town explained precisely how it used this information, as did the Board. *Id.* at 567, 556 A.2d at 65. That detailed explanation — what we have demanded for years — is not remotely met by the trial court's attempt to explain why it preferred an appraisal to the auction value in the present case. Likewise, the majority opinion responds with the same quantum of analysis as the trial court: "The court was . . . within its discretion in finding that the circumstances of the auction sale made it a less reliable indicator of fair market value than the bank's own appraisal, which was contemporaneous with the final foreclosure decree." 166 Vt. at 579, 687 A.2d at 892-93.[*]

The trial court never tells us that the auction was unreliable; it simply mentions the absence of evidence as to the number of bidders. The number of bidders, however, is not relevant unless the mortgagee's lack of diligence or want of bona fides is the reason for the low number of bidders. See *Arnold v. Melvin R. Hall, Inc.*, 496 N.E.2d 63, 65 (Ind. 1986) ("proof that there was but one bidder at the sale will not serve, by itself, to rebut the presumption that the bid represents the value of the property"); see also *Chartrand v. Newton Trust Co.*, 5 N.E.2d 421, 423 (Mass. 1936) (fact that representative of mortgagee was only bidder does not establish that price received was so grossly inadequate as to constitute bad faith); *Nebraska Fed. Sav. & Loan Ass'n v. Patterson*, 321 N.W.2d 71, 72 (Neb. 1982) (affirming sale for amount less than alleged value where there was no evidence of fraud, no shocking discrepancy between price and value, and no evidence that a higher bidder could be obtained in another sale). Defendants did not present any evidence relating the number of bidders to a lack of good faith, nor did the court find that the bank did not meet an appropriate standard of care or honesty.

The trial court's main rationale for rejecting the sale price seems to be that the sale price differed markedly from nearly concurrent appraisals. What, however, did the court tell us about why it preferred one of the appraisals to the actual sale price? Merely this: "[T]he property is unique and was not easy to appraise. Although an appraisal is only an opinion, in this case Mr. Wood was a trained professional who based his appraisal on research and used a methodology approved by his profession at arriving at that opinion." This explanation does not address the ultimate issue, the good faith and due diligence of the mortgagee, and therefore is hardly sufficient to withstand review.

In sum, the bank was entitled to a deficiency equal to the difference between the mortgage debt and the fair market value of the foreclosed property. Where there was no real challenge to the bona fides of the sale, or any findings or conclusions stating that the sale did not meet standards of diligence and good faith, the fair market value was established by a sale at auction following the bank's three-month effort to sell through a broker.

I therefore dissent.

---

[*] I should add that *Sondergeld* did not overrule *Royal Parke Corp. v. Town of Essex*, 145 Vt. 376, 488 A.2d 766 (1985). *Royal Parke* held that fair market value "is perforce established for appraisal purposes" by the operation of an actual, relatively concurrent, bona fide sale. *Id.* at 378-79, 488 A.2d at 768. Where such a sale exists, there is no need to consider other factors in estimating fair market value. *Id.* at 379, 488 A.2d at 768. *Sondergeld* did not hold that a court may ignore a value established by an actual sale of the subject property where no question is raised about the fairness or bona fides of the sale.