Union Bank v. Neylon, No. 186-6-09 Oscv (Morris, J., Aug. 17, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
SUPERIOR COURT

| | | |
|---|---|---|
| UNION BANK, | ) | ORLEANS UNIT |
| Plaintiff, | ) | |
| | ) | CIVIL DIVISION |
| vs. | ) | |
| | ) | DOCKET NO. 186-6-09 Oscv |
| J. DAVID NEYLON, JANET K. | ) | |
| NEYLON, JAMES P. SEDORE, | ) | |
| and SUSAN M. SEDORE | ) | |
| Defendants. | ) | |

OPINION AND ORDER

This collections case is before the court on the parties' cross-motions for partial summary judgment. Defendant David Neylon has also filed a motion to dismiss his late wife Janet from this suit pursuant to V.R.C.P. 25(a)(1). Plaintiff Union Bank is represented by Gail E. Westgate, Esq., and the Defendants are represented by Craig Weatherly, Esq.

FACTS

Defendants David and Janet Neylon and James and Susan Sedore (Defendants) are members of the Lakeview Inn Partners, LLC (Lakeview), a company with its principal place of business in Greensboro, Vermont. On February 3, 2004, Lakeview executed and delivered to Plaintiff a promissory note in the principal amount of $750,000 (Note 1). On the same day, each Defendant executed and delivered to Plaintiff personal guaranties guaranteeing the repayment of Note 1. On March 18, 2004, Lakeview executed and delivered to Plaintiff a second promissory note in the principal amount of $15,645 (Note 2). On that day, each Defendant also executed and delivered to Plaintiff personal guaranties guaranteeing the repayment of Note 2. Both of the notes were also secured by a mortgage deed to land located in Greensboro.

Lakeview defaulted on both notes, and on February 13, 2006, Plaintiff brought a strict foreclosure action against Lakeview and Defendants. This court entered a judgment of foreclosure and found that the amount due under the notes was $792,302.27 plus interest as of November 7, 2007. See *Union Bank v. Lakeview Inn Partners*, No. 32-2-06 Oscv (Vt. Super. Ct. Mar. 20, 2008). The mortgaged property was not redeemed, and the land became Plaintiff's property by operation of law on September 17, 2008. At that point, Lakeview's total debt to Plaintiff was $856,147.72 ($792,302.27 at the time of judgment plus $63,845.45 accumulated interest from the time of judgment until the redemption period expired).

After the foreclosure decree was entered, but before the redemption period expired, Plaintiff expended an additional $9,122.16 on insurance for the property. Plaintiff also expended an additional $13,043.50 in attorneys' fees on the foreclosure action. This additional $22,165.66 was not reflected in the court's March 20, 2008 foreclosure decree; however, Plaintiff claims

Defendants owe it this amount by virtue of the guarantees.

After the redemption period expired, Plaintiff incurred additional expenses in order to sell the property. These expenses, including appraisal fees, insurance, taxes, utilities, brokerage fees, marketing fees, and legal fees, totaled $53,667.62. Plaintiff claims Defendants also owe this amount by virtue of the guarantees. Plaintiff then sold the property for $500,000, and the sale closed on February 28, 2009. The parties dispute what the fair market value of the property was on September 17, 2008.

Plaintiff seeks to recover from Defendants the amount owed on the notes, which Defendants guaranteed, plus post-judgment expenses set-off by the fair market value of the property on September 17, 2008. Defendants dispute that the guaranties require them to pay any expenses Plaintiff incurred after the foreclosure decree was entered or any prejudgment interest. Each Defendant's guaranty contains the same relevant language. The guaranties purport to make Defendants liable for each and every debt of Lakeview's. Specifically, Defendants' unconditional liability for the debts was unlimited, and included attorneys' fees, collections costs, and enforcement expenses related to the underlying debt. Under the guaranties, Defendants purported to

> waive[] any and all defenses, claims and discharges of [Lakeview] . . . . Without limiting the generality of the foregoing, the [guarantors] will not assert, plead or enforce against [Plaintiff] any defense of . . . res judicata . . . or unenforceability which may be available to [Lakeview] . . . . The [guarantors] expressly agree[] that [they] shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of [Lakeview] or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The [guarantors] shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though [Lakeview's] obligations had not been discharged.

(Pl.'s Exs. 4-7 ¶ 7.)

STANDARD OF REVIEW

The parties each move for partial summary judgment on this issue of liability. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . referred to in the statements required by Rule 56(c)(2), show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). The party moving for summary judgment "has the burden of proof, and the opposing party must be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue of material fact exists." *Price v. Leland*, 149 Vt. 518, 521 (1988). However, "[s]ummary judgment is mandated . . . where, after an adequate time for discovery, a party 'fails to make a showing sufficient to establish the existence of an element' essential to his case and on which he has the burden of proof at trial." *Poplaski v. Lamphere*, 152 Vt. 251, 254-55 (1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986)).

The court derives the undisputed facts from the parties' statements of fact under V.R.C.P. 56(c)(2). Facts in the moving party's statement are deemed undisputed when supported by the record and not controverted by facts in the nonmoving party's statement which are also supported by evidence in the record. See *Boulton v. CLD Consulting Eng'rs, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413 (citing *Richart v. Jackson*, 171 Vt. 94, 97 (2000)).

## DISCUSSION

As a preliminary matter, Defendant David Neylon moves to dismiss his late wife Janet from this suit pursuant to V.R.C.P. 25(a)(1). Mr. Neylon filed a suggestion of death upon the record on July 20, 2009.

> If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party . . . . Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

V.R.C.P. 25(a)(1). No party has filed a motion for substitution in this case, and more than 90 days have passed since the suggestion of death was filed. Therefore, Mr. Neylon's motion to dismiss is GRANTED, and Janet Neylon is dismissed from this action.

It bears repeating what the parties agree on and what they do not. This focuses the court's attention on those few legal issues that are the subject of the instant motions. It is undisputed that the Defendants signed separate identical guaranties guaranteeing Lakeview's notes. It is undisputed that Lakeview defaulted on the notes, and its property was foreclosed upon. It is undisputed that Defendants are liable under the guaranties to Plaintiff, at a minimum, for Lakeview's deficiency. The court's strict foreclosure decree assessed Lakeview's total debt (principal plus interest plus costs) to Plaintiff at $856,147.72 as of September 17, 2008. Under the guaranties, Defendants are liable, at a minimum, for the difference between $856,147.72 and the fair market value of Lakeview's property as of September 17, 2008. See *Vt. Nat. Bank v. Leninski*, 166 Vt. 577, 578 (1996) (mem.) ("In strict foreclosure actions, the deficiency is the difference between the fair market value of the premises and the debt. The value of the property is to be determined as of the day the decree of foreclosure becomes absolute." (citation omitted)). The fair market value of the Greensboro property on September 17, 2008 is a genuine issue of disputed material fact. In addition to the deficiency described above, Defendants are also liable under the guaranties, at a minimum, for Plaintiff's attorney's fees in the instant action to collect on the guaranties. These facts are undisputed.

Parties seek summary judgment on the following disputed legal obligations of the Defendants under the guaranties: (1) Defendants' liability for the $22,165.66 in expenses Plaintiff incurred in the foreclosure action after the decree was entered but before the redemption period expired; (2) Defendants' liability for the $53,667.62 in expenses Plaintiff incurred in

selling the foreclosed property after the redemption date; and (3) Defendants' liability for the interest on the deficiency after the redemption period expired, i.e., prejudgment interest. The court will address each issue in turn.

A.    Defendants' liability for pre-foreclosure expenses

Plaintiff argues that Defendants are liable under the guaranties for Plaintiff's additional foreclosure expenses (insurance and attorney's fees) it incurred after the foreclosure decree was entered on March 20, 2008 but before the redemption date expired on September 17, 2008. Undoubtedly these costs claimed by Plaintiff are the costs it incurred in its original foreclosure suit to collect from the principal debtor, Lakeview. According to the guaranties, Defendants are unconditional guarantors of payment, as opposed to conditional guarantors of collection. (Pl.'s Exs. 4-7 ¶¶ B, 2.) "An unconditional guarantor of payment . . . is not liable for the expenses incurred by the creditor in attempting to collect from the principal debtor, unless the parties agree otherwise." 38 Am. Jur. 2d *Guaranty* § 73 (1999). This rule is consistent with Vermont law. See *Woodstock Bank v. Downer*, 27 Vt. 539, 544 (1855) (the costs of suit against the maker of a note cannot be recovered from a person who absolutely guarantees its payment because such suit is not necessary to charge the guarantor).

Ordinarily, Defendants would not be liable for such collections costs incurred in the foreclosure suit. However, it appears that the Defendants expressly agreed to such liability. "The liability of the [guarantors] shall be . . . UNLIMITED (if unlimited . . . the [guarantors] shall be liable for all Indebtedness, without any limitation as to amount), *plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto*." (Pl.'s Exs. 4-7 ¶ 4 (emphasis added).) "When the guarantor expressly agrees to repay the guarantee for the expenses of attempted collection from the primary debtor there seems to be no reason for refusing to enforce such an agreement, and the courts have accordingly held guarantors liable on such agreements." W.E. Shipley, *Guaranty of Payment at Maturity as Covering Expense of Collection*, 4 A.L.R.2d 138 § 3 (1949). Furthermore, under the notes, Lakeview was liable for Plaintiff's attorney's fees for collection on the notes and Plaintiff's costs of insuring and protecting the mortgaged property. Therefore, Plaintiff is not restrained by the absolute and unconditional form of the guaranty from collecting its enforcement expenses associated with the foreclosure action from Defendants.

Plaintiff argues that Defendants are liable for its pre-foreclosure expenses under the broad liability provision of the guaranties which makes Defendants liable for "any" of Lakeview's debts and deficiencies after foreclosure, regardless of whether Lakeview itself would continue to be liable under the law. (Pl.'s Exs. 4-7 ¶ 7.)

Clearly, Lakeview is no longer liable for Plaintiff's pre-foreclosure expenses because they were not included in the foreclosure decree. Under the doctrine of res judicata, the amount of indebtedness set forth in the foreclosure decree ($856,147.72) is the only amount Lakeview is liable for. See *LaFarr v. Scribner*, 150 Vt. 159, 161 (1988) (a foreclosure decree bars litigation on the amount of indebtedness due on the mortgage in another action by virtue of the doctrine of res judicata). Plaintiff could have moved to amend the foreclosure decree before the redemption period expired to include these additional costs, but it did not. See *In re Tariff Filing*, 172 Vt.

14, 20 (stating that res judicata "does not require that the claims were actually litigated in the prior proceeding; rather it applies to claims that were or should have been litigated in the prior proceeding."). Therefore, Plaintiff is barred from seeking these additional expenses from Lakeview now.

Of course, Plaintiff is not seeking these additional expenses from Lakeview now; it is seeking them from Defendants under the guaranties. However, Defendants argue that they are also entitled to raise the defense of res judicata as to these pre-foreclosure expenses. As a general rule, "a guarantor steps into the shoes of the original debtor and has all the same obligations and defenses of the original debtor." *City of Lincoln v. Hershberger*, 725 N.W.2d 787, 791 (Neb. 2007).

> [U]nder the doctrine of res judicata a judgment may be conclusive against one who is liable over to the judgment debtor in respect to the cause of action adjudicated, or one derivatively responsible to the judgment creditor, at least where there has been notice to the third party of the prior action and an opportunity to defend afforded. The principle applies to indemnitors, sureties and guarantors.

*Scaglione v. St. Paul-Mercury Indem. Co.*, 145 A.2d 297, 306 (N.J. 1958). Defendants were parties in Plaintiff's prior foreclosure suit, and therefore the defense of res judicata is available to them in this action.

Plaintiff counters that the Defendants explicitly waived the res judicata defense in their guaranties. "[A] guarantor can waive its right to raise the legal defenses of the principal." *O'Brien v. Ravenswood Apartments, Ltd.*, 862 N.E.2d 549, 555 (Ohio Ct. App. 2006); see also *HSH Nordbank Ag New York Branch v. Swerdlow*, 672 F. Supp. 2d 409, 418 (S.D.N.Y. 2009) ("a guarantor cannot assert defenses that it expressly waived in the guaranty agreement"). Parties may agree to waive the defense of res judicata specifically. "Applying the doctrine of res judicata enforces the rule against claim-splitting by barring further litigation of claims which 'could have been litigated' between the parties in an earlier proceeding. The rule against claim-splitting is not absolute, however. A defendant may waive the rule by express or implied consent." *Bill Greever Corp. v. Tazewell Nat. Bank*, 504 S.E.2d 854, 857 (Va. 1998). As such, Defendants may not assert that res judicata precludes Plaintiff from recovering its pre-foreclosure expenses because Defendants expressly waived such a defense.

However, even if foreclosure expenses can be relitigated by the parties, Defendants are only liable for those expenses allowed under the guaranties.

> [A] guaranty is an undertaking or promise on the part of one person which is collateral to a primary or principal obligation on the part of another and which binds the obligor to performance in the event of nonperformance by such other, the latter being bound to perform primarily.

*Merrimack Sheet Metal, Inc. v. Liv-Mar, Inc.*, 147 Vt. 85, 88 (1986) (quotations and citation omitted). "While ordinarily the liability of a guarantor will not exceed in scope that of his

principal, the guarantee is a separate undertaking and may impose lesser or even greater collateral responsibility on the guarantor." *Am. Trading Co., Inc. v. Fish*, 364 N.E.2d 1309, 1312 (N.Y. 1977) (citations omitted). Under the guaranties in this case, Defendants are "absolutely and unconditionally" liable for the payment of "each and every debt, liability and obligation of every type and description which [Lakeview] may now or at any time hereafter owe to [Plaintiff] (. . . hereinafter collectively referred to as the 'Indebtedness')." (Pl.'s Exs. 4-7 ¶ B.)

This language indicates that Defendants' liability is co-extensive with Lakeview's, and because Lakeview's liability is limited to the amount in the foreclosure judgment Defendants' is as well. However, a closer reading of the guaranties reveals that Defendants are liable for all of Lakeview's debt plus the costs of collecting that debt. (Pl.'s Exs. 4-7 ¶ 4.) Additionally, Defendants

> expressly agree[d] that [they] shall be and remain liable, to the fullest extent permitted by applicable law, for *any deficiency remaining after foreclosure of any mortgage* or security interest securing Indebtedness, *whether or not the liability of* [*Lakeview*] . . . *for such deficiency is discharged* pursuant to statute or judicial decision. *The* [*guarantors*] *shall remain obligated*, to the fullest extent permitted by law, *to pay such amounts as though* [*Lakeview's*] *obligations had not been discharged.*

(Pl.'s Exs. 4-7 ¶ 7 (emphasis added).)

This provision indicates that Defendants' liability to Plaintiff *exceeds* Lakeview's. Although Lakeview is liable to Plaintiff only for the judgment debt in the foreclosure decree, the clause quoted above indicates that Defendants' liability extends to additional costs associated with the foreclosure suit, such as pre-foreclosure attorney's fees and insurances costs, which Lakeview is "discharged" from paying (because they were not included in the foreclosure decree) but which Lakeview would have been obligated to pay if the claims were not barred by res judicata. Therefore, Defendants are liable to Plaintiff under the guaranties for foreclosure costs which should have been, but were not, included in the foreclosure decree, i.e., expenses incurred after the decree was issued but before the redemption period expired. Summary judgment is GRANTED in Plaintiff's favor on this issue; however, the court reserves its right to set *reasonable* foreclosure costs, and it is not bound by Plaintiff's representations of what those costs should be. See V.R.C.P. 80.1(f) (upon defendants' objection, attorney's fees shall be set by the court after notice and hearing in foreclosure cases); see also *Parker, Lamb & Ankuda, P.C. v. Krupinsky*, 146 Vt. 304, 307 (1985) (trial courts have wide discretion in determining reasonable value of legal services).

B.     Defendants' liability for post-foreclosure sales costs

Plaintiff next seeks to collect from Defendants the costs Plaintiff incurred selling the property after the redemption date. Plaintiff maintains that Defendants are liable for such costs under the broad language of guaranties. Plaintiff asserts that the following provisions make Defendants liable for Plaintiff's post-foreclosure sales costs.

> The liability of the [guarantors] shall be . . . UNLIMITED (if unlimited . . . the [guarantors] shall be liable for all Indebtedness, without any limitation as to amount), *plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto*. . . .
>
> The [guarantors] will pay or reimburse [Plaintiff] for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by [Plaintiff] *in connection with the protection, defense or enforcement of this guaranty in any litigation* or bankruptcy or insolvency proceedings.

(Pl.'s Exs. 4-7 ¶¶ 4, 5 (emphasis added).)  As indicated above, Lakeview is not liable for any expenses other than those assessed in the strict foreclosure decree.  Furthermore, Lakeview is not liable for any post-foreclosure sales costs.  See *Leninski*, 166 Vt. at 578.  Defendants are liable only for Lakeview's debts and the "collection costs and enforcement expenses referable" to collecting on that underlying debt.  However, Plaintiff's post-foreclosure sales costs are not "collections costs" or "enforcement expenses" as contemplated under the guaranties.

Although paragraph 7 of the guaranty specifically allowed Plaintiff to recover "any" of the underlying costs of the foreclosure suit, despite any claim of res judicata, the guaranties contain no similar provision allowing Plaintiff to recover post-foreclosure costs.  "If the terms of the [guaranty] are plain and unambiguous, 'they will be given effect and enforced in accordance with their language.'" *O'Brien Brothers' P'ship, LLP v. Plociennik*, 2007 VT 105, ¶ 9, 182 Vt. 409 (quoting *KPC Corp. v. Book Press, Inc.*, 161 Vt. 145, 150 (1993)).  "A contract term [in a guaranty] is ambiguous if 'reasonable people could differ as to its interpretation.'" *Id*. (quoting *Trs. of Net Realty Holding Trust v. AVCO Fin. Servs. of Barre, Inc.*, 144 Vt. 243, 248 (1984)).

Paragraph 5 is plain and unambiguous.  It allows Plaintiff to recover its costs in connection with the enforcement of the guaranty.  So while this provision would allow Plaintiff to recoup its reasonable attorneys' fees and legal expenses for bringing the *instant* litigation, Paragraph 5 does not allow for the recovery of similar expenses in bringing the foreclosure litigation because that action was not in connection with the enforcement of the guaranty.  Therefore, Plaintiff cannot recover its post-foreclosure sales costs under paragraph 5 of the guaranties.

Paragraph 4 is much broader, and its meaning is more open to interpretation.  According to paragraph 4, Defendants are liable for all of Lakeview's debt, "*plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto*."  (Pl.'s Exs. 4-7 ¶ 4 (emphasis added).)  Plaintiff interprets paragraph 4 of the guaranty as implicitly encompassing the post-foreclosure sales costs.  "These expenses were both 'referable' to Lakeview's debt and made 'in connection with' the enforcement of the Guarantees."  (Pl.'s Mem. Opp'n Summ. J. filed 1/6/10 at 11.)  However, "the obligation of the guarantor must be strictly interpreted in favor of the guarantor." *O'Brien Brothers'*, 2007 VT 105, ¶ 11.  "Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract." *Stern v. Sawyer*, 78 Vt. 5, 11 (1905) (citation and quotation omitted), quoted in *id*.  Plaintiff's interpretation of paragraph 4 is unreasonably broad, and the link between Plaintiff's post-foreclosure sales costs and

Lakeview's underlying debt is too tenuous to be covered by the general language contained in paragraph 4 of the guaranty. Unlike the pre-foreclosure costs, which were directly attributable to Plaintiff's enforcement expenses in the foreclosure case and which were specifically referenced in Lakeview's notes, Plaintiff's expenses in selling the property are not referenced in either the notes or the guaranties. If the parties had intended for these costs to be covered by the guaranties, then the guaranties should have explicitly provided for these costs.

We have addressed Plaintiff's argument in an earlier order regarding the dissolution of an ex parte attachment.

> Despite the breadth of the dragnet provision in the guaranty, the bank has not pointed to any law which creates any obligation by the borrower to pay the bank its expenses for holding the property once the property belongs the bank, nor is this court aware of any such law. This conclusion is buttressed by the law that the measure of a lender's remedy in a deficiency action upon strict foreclosure is limited to the difference between sums due under the mortgage note and the fair market value of the property at the time of non-redemption. See *Leninski*, 166 Vt. at 578. While selling expenses and the expenses for preserving the property until sale and confirmation would be available if the property was being sold by public auction under a power of sale, see V.R.C.P. 80.1(j)(2), the fact is that there appears to be no support for a claim by a mortgagee for ownership and disposition expenses incurred after a strict foreclosure.

*Union Bank v. Neylon*, No. 186-6-09 Oscv, slip op. at 3-4 (Vt. Super. Ct. Nov. 10, 2009) (Bent, J.). The law does not recognize Plaintiff's post-foreclosure costs as ordinary collections expenses within the strict meaning of the guaranties. Therefore, Plaintiff's post-foreclosure expenses are beyond the reach of the guaranties, and Defendants are not liable for them. Summary judgment is GRANTED on this issue in favor of Defendants.

C.    Defendants' liability for prejudgment interest

Finally, Plaintiff seeks to recover prejudgment interest on the amount of Indebtedness Defendants owe Plaintiff under the guaranties from September 17, 2008. "Prejudgment interest may be awarded as damages for detention of money due for breach or default. This interest is awarded as of right when the principal sum recovered is liquidated or capable of ready ascertainment and may be awarded in the court's discretion for other forms of damage." *Newport Sand & Gravel Co. v. Miller Concrete Const., Inc.*, 159 Vt. 66, 71 (1992) (citing Reporter's Notes, 1981 Amendment, V.R.C.P. 54). "Interest ordinarily runs from the time of maturity or demand for payment or the time of default, which may be the date when the action is commenced." *Id*. at 72. Prejudgment interest is available in deficiency proceedings after a decree of strict foreclosure is entered. See *F.D.I.C. v. Thompson*, 741 A.2d 972, 973 (Conn. App. Ct. 1999) (affirming award of interest from date of strict foreclosure judgment to date of deficiency judgment).

Defendants argue that an award of prejudgment interest would be improper in this case because the value of the property on September 17, 2008 is an issue of disputed fact and is

therefore incapable of ready ascertainment. In support of this proposition, Defendants cite *Winey v. William E. Dailey, Inc.*, 161 Vt. 129 (1993). In *Winey*, a home purchaser sued her building contractor for breach of the construction contract. The superior court declined to award prejudgment interest for the period between the date of improper construction of the house and the date of the judgment. See *id*. at 141. The superior court found that the amounts awarded for repair of the construction to comply with the plans were determined as of the date of trial so that an award of interest from the date of construction would result in double recovery. See *id*. The Supreme Court affirmed and held that the trial court had not abused its discretion because "the damages were not readily ascertainable and were the subject of conflicting expert testimony. . . . Thus, we do not believe plaintiff was entitled to interest on most of her damages as a matter of right." *Id.*

Defendants argue that the damages in the instant case, i.e., Lakeview's total deficiency, are a disputed issue of fact which is likely to be resolved after experts testify at trial as to the market value of the Greensboro property on September 17, 2008. Defendants essentially argue that anytime damages are the subject of conflicting expert testimony then the damages are not readily ascertainable, and therefore prejudgment interest is improper.

The *Winey* case is distinguishable from the case at bar. Although both are essentially breach of contract cases, the instant case involves collection of a known debt and the valuation of real property, whereas *Winey* involved breach of a construction contract under four separate legal theories and the valuation of needed repairs. See *id*. at 132. *Estate of Fleming v. Nicholson*, 168 Vt. 495 (1998), involved an award of prejudgment interest in a case involving the valuation of real property. In *Nicholson*, the court found a lawyer liable to a client for failing to perform a proper title search. The client purchased the land in 1988 with an unknown defect in the title, and the property was foreclosed upon seven years later after the defect had been discovered. See *id*. at 500. "[T]he trial court calculated damages by taking the difference between the value of the unencumbered property [in 1988] and the value of the encumbered property [in 1995]. . . . The trial court then awarded prejudgment interest based on this calculation of damages." *Id.* The defendant in *Nicholson*, like the Defendants here, argued that the award of prejudgment interest was improper because the damages were not readily ascertainable.

In affirming the superior court's award of prejudgment interest, the Supreme Court undermined Defendants' argument that a dispute over the value of damages means prejudgment interest is always unavailable.

> The mere fact that plaintiff and defendant presented conflicting theories of damages does not, as defendant argues, automatically lead to the conclusion that the damages were not reasonably ascertainable. Plaintiffs and defendants in a tort action will always have an incentive to characterize the correct measure of damages in a way that is advantageous to them. Despite this fact, where the court has the option to rely on an established method of calculation, the damages may be said to be reasonably ascertainable. If we accepted defendant's argument, defendants would always be able to unilaterally defeat an award of prejudgment interest simply by presenting a conflicting theory of damages.

*Id.* at 502 n.3.

The defendants in *Nicholson* further argued "that it is unfair to award prejudgment interest because defendant could not have been aware of the extent of damages in 1988, given that damages were ultimately calculated based on a figure obtained from a 1995 transaction." *Id.* at 503. However, the Court held that "[t]he fact that damages were ultimately calculated on the basis of a 1995 figure does not work an unfairness against defendant. The property always possessed an implicit price; it simply could not be established through a market transaction until it went up for sale in 1995." *Id.*

We find the *Nicholson* Court's reasoning to be dispositive of the instant dispute. We reject Defendants' argument that prejudgment interest is unavailable because the value of the mortgaged property was, as yet, unknown on September 17, 2008. Even though the Greensboro property was not sold that day, it "always possessed an implicit price; it simply could not be established through a market transaction until it went up for sale in" 2009. *Id.* Because the market value of the Greensboro property on September 17, 2008 is reasonably ascertainable through an established method of calculation, e.g., appraisal or the subsequent sale price, prejudgment interest is available in this case. Therefore, summary judgment is GRANTED in favor of Plaintiff on this issue.

## ORDER

For the reasons stated, Defendants' motion to dismiss Janet Neylon is GRANTED. Defendants' motion for partial summary judgment is GRANTED IN PART and DENIED IN PART. Plaintiff's motion for partial summary judgment is DENIED IN PART and GRANTED IN PART.

Dated at Newport, Vermont, this _____ day of August, 2010.

_____

Walter M. Morris, Jr.
Presiding Judge