# ROLLIN AMSDEN v. JOHN ATWOOD.

OCTOBER TERM, 1895.

*Tenancy from year to year by holding over.    Oral agree-*

*ment.    Conditions of original lease extended.*

*Pleading.    Refusal to perform.*

1.  A tenant, who, after the expiration of a written lease, con-
    tinues in possession of the premises upon an oral agree-
    ment that he shall hold them upon the same terms from
    year to year, becomes a tenant from year to year by holding
    one full year and entering upon next, in exactly the same
    way as if there had been no oral agreement, for this agree-
    ment creates nothing but a tenancy at will.

2.  The court will not reconsider a decision made by it in the
    same case on a state of facts not different in legal effect.

3.  *Held*, that the first count in the defendant's declaration in off-
    set was not upon the written agreements but upon a state
    of facts to which they were introductory.

4.  An oral agreement to extend a written lease for one year
    would be inadmissible as within the statute of frauds, and
    if proved would create a tenancy at will merely.

5.  If a tenant, after the expiration of a written lease, becomes a
    tenant from year to year by holding over without new
    agreement, the holding is taken to be on the terms and con-
    ditions of the original lease.

6.  When by the terms of a contract the acts of performance are
    mutual and concurrent, the refusal of one party to perform
    relieves the other from the necessity of tendering perform-
    ance upon his part in order to maintain an action for a
    breach of the contract.

General assumpsit, with a count for use and occupation. Pleas, the general issue, with two special pleas in setoff. Trial by jury at the May term, 1895, Windsor county, TAFT, J., presiding. Verdict and judgment for the plaintiff. Both parties except.

The plaintiff sought to recover for eighty-nine items but no question was made in reference to any of them except those for rent and power under the lease hereinafter mentioned.

It appeared that August 19, 1885, the plaintiff and one Loren Atwood entered into a written lease for the use of the premises in question. A copy of this lease appears in the count in offset which is hereinafter given.

Loren Atwood entered into possession and continued to occupy under this instrument until April, 1890, when the plaintiff and the defendant, John Atwood, entered into another written agreement by the terms of which the former lease was to be extended in favor of John Atwood for one year from November 1, 1890, with the option to the defendant of still further extending the lease for a period of five years from November 1, 1891, provided said option was exercised in the manner specified. A copy of this last agreement also appears in the plea in offset, being dated April 1, 1890.

By virtue of this writing the defendant entered into the possession of the premises and continued to occupy them until December 20, 1892. About September 1, 1891, the plaintiff and defendant had a conversation in reference to the continued occupation of the premises by the defendant. The parties were agreed that the defendant then notified the plaintiff that he should not exercise the option of extending the lease for five years. The plaintiff claimed that the defendant was to remain in the possession of the premises as a tenant at will after November 1, 1891, while the defendent insisted that he was to remain as a tenant from year

to year. The court submitted to the jury to find whether the oral agreement of September 1st was as claimed by the plaintiff or whether it was as claimed by the defendant and the jury found for the defendant that he was to continue as a tenant from year to year.

By the terms of the instrument extending the lease, the rent was payable in quarterly instalments. The defendant occupied under that agreement two full years, paying the rent for that term, and from November 1st to December 20th, 1892. One of the questions was whether the plaintiff could recover 'this unpaid rent from November 1st to December 20th, the plaintiff claiming that he could because the tenancy was at will and the defendant insisting that he could not because the tenancy was from year to year and therefore not terminable at the will of the plaintiff.

The original lease also contained a stipulation that the plaintiff should saw the logs of the defendant in his mill at an agreed price per hour which was to be endorsed upon the lease and this condition was extended by the written agreement of extension. The defendant claimed that this stipulation was binding upon the plaintiff; that the plaintiff had refused to saw his logs; and that he was entitled to damages on that account. The plaintiff maintained that defendant could not recover under this condition since the tenancy being at will the condition ended with the holding of the defendant.

This phase of the case was before the court in 67 Vt. 289, and it was there held that, upon facts substantially as above detailed, the defendant had become a tenant from year to year; that his holding would be upon the terms and conditions of the written lease as modified by the instrument of extension, that if the plaintiff terminated the tenancy he could not have the rent from November 1st to December 20th, and that the defendant might recover damages for the failure of the plaintiff to saw his logs.

Upon the present trial the plaintiff objected to the admission of all evidence upon the part of the defendant tending to support his plea in offset upon the ground that the contract therein set up was within the statute of frauds and the evidence was admitted subject to this exception.

The plaintiff insisted that there was no evidence tending to show that he had refused to saw the logs of the defendant so as to entitle the defendant to maintain an action for a breach of that stipulation in the lease. The court so held and to this holding the defendant excepted.

The evidence of the defendant upon that point was in substance that he had in his employ a man by the name of Cross, who was indebted to the plaintiff, and that the plaintiff told the defendant that he must either discharge Cross or quit the occupation of the premises; that the defendant declined to discharge Cross; that upon getting to the mill on the morning of December 20, 1892, the foreman told him that he had received instructions not to saw any more logs for him without further orders; that the defendant thereupon went to the office of the plaintiff and asked him whether he was intending to saw any more logs; and the plaintiff in answer informed the defendant that he must either discharge Cross or secure his bill, and that unless he did one or the other he should decline to saw any more logs; that thereupon the defendant notified the plaintiff that he should hold him responsible in damages. The evidence further showed that at the time the defendant had a quantity of logs in the mill yard and some logs upon the roll-way ready to be sawed, and that he was present for the purpose of assisting in the sawing of the logs, as he usually did, when the foreman of the plaintiff notified him that no more would be sawed. No price for sawing the logs had ever been indorsed upon the lease but the plaintiff had charged and defendant had paid a given price for this service.

The first special plea in the offset was as follows:

"That the plaintiff before and at the time of the com-

mencement of this suit was indebted to the defendant in the sum of one thousand dollars, for that the said plaintiff and one Loren Atwood at said Windsor, on the 19th day of August, A. D. 1885, by their indenture under seal, made, entered into and mutually executed a contract, of which the following is a copy:

This indenture, made this 19th day of August, 1885, between Rollin Amsden of Windsor, Vt., and Loren Atwood, of Charlestown, N. H., witnesseth:

That said Amsden, in the consideration of the rents and agreements hereinafter stipulated to be paid and performed by said Atwood, doth hereby lease to said Atwood twenty-five feet in length of the first floor and basement of the north end of his saw-mill building, on the east side of Ascutney street in said Windsor, being the portion of said building now partitioned off on the first floor for box-making and the same sized room in the basement under it, to be used and occupied by said Atwood for manufacture of chair stock, together with room in the mill yard sufficient to accommodate said Atwood in storage of logs, lumber, and stock of his business; said Amsden agrees to partition off said section of the basement and put in a proper floor and windows in the east side thereof sufficient to properly light the same, to allow said Atwood to use the cutting-off saw in said building, where, and as it now is, when necessary in his business, and if said Atwood wishes to have a larger or wider belt to run the same he may at his own expense furnish and put them into the place of the saw and belts now in use; also to saw said Atwood's logs into lumber as desired at a price per hour to be agreed upon and indorsed hereon, which shall be less than the regular price; also to lengthen the main shaft in said building and carry the same into said part occupied by said Atwood and furnish said shaft with proper driving pulleys fit to drive said Atwood's machinery; alse to furnish said Atwood with power from the water wheels of said mills sufficient to run in said Atwood's premises three knife turning lathes for turning chair stock, one back saw and two or three bench saws and to the amount in all of twenty-five horse power per day of twelve hours each workday during the term of this lease, and if plenty of water for both said Atwood may run fourteen hours per day, and when the other machinery in the building is not running said Atwood may use more than twenty-five horse

power if desired during the hours aforesaid and said Atwood shall have the first right to power from said water wheels to amount of said twenty-five horse power; but said Amsden is not to be held responsible for failure to furnish said power caused by unavoidable accident. To have and to hold said granted promises, rights and privileges for the term of five years from the first day of October, 1885, for the rent of four hundred dollars per year, payable in equal quarterly installments of one hundred dollars each on the first days of January, April, July and October each year during said term, the first installment being payable January 1st, 1886. Said Amsden further agrees to forthwith build a dry-house proper and sufficient for said Atwood's use in his business as near said mill as he can and not affect the rate of insurance thereon, and allow said Atwood to use same during said term for the rent of eight per cent. per year on the actual cost of said dry-house, said eight per cent. to be paid in equal quarterly installments at the time with the rent of the rooms in the mill, said Atwood to furnish and put in place at his own expense all heating apparatus and piping required, the same to be put up with care, and said Atwood has the right to remove all fixtures put in said mill building or dry-house by him during said term at the expiration of this lease. It is further agreed that if by reason of dry weather water should fail so that said Amsden cannot furnish sufficient power to run any part of said Atwood's machinery, then, while said lack of power exists, the rent above reserved shall be reduced one-half. And said Atwood agrees on his part to pay rent of four hundred dollars per year in equal quarterly instalments of one hundred dollars each on the first days of January, April, July and October in each year during said term, the first payment to be made on the first day of January, 1886; and will also pay said rent of eight per cent. on the actual cost of said dry-house in equal instalments at the same time of the payment of the other rent above reserved; that he will not allow or permit any waste upon the premises; that he will take good care of stoves and stove pipes on the premises and keep the same in good and safe condition and take proper care of all ashes taken from the stoves thereon; that the lessor may enter to view, make improvements and expel the lessee if he fail to pay his rent or perform his agreements herein, and

that at the expiration of this lease he will peaceably quit and surrender up the premises to the lessor or his representatives in as good order and condition as the same are now or may be put into by said lessor during said term, reasonable use and also damage by fire or other unavoidable casualty excepted. It is agreed that if the premises or any other part thereof during said term be destroyed or damaged by fire or other unavoidable casualty so that the same shall be rendered unfit for use there, the rent hereinbefore reserved or a just and proportionate part thereof, according to the nature and extent of the injuries sustained, shall be suspended or abated until said premises shall have been put in proper condition for use by said lessor, or these presents shall be determined and ended at the election of said lessor or his legal representatives.

And the defendant avers that the said Loren Atwood, who was a manufacturer of chair stock, entered into possession of said premises described in said contract and of all the rights and privileges specified therein, and continued in the use, occupation and exercise of the same manufacturing chair stock till the first day of April, 1890, during all which time the plaintiff and said Loren Atwood kept and performed all stipulations required of them respectively as specified in said contract, each party being governed by the terms and provisions of said contract; that on the first day of April, 1890, the plaintiff and defendant, with the concurrence and consent of the said Loren, made, entered into and executed a contract, of which the following is a copy:

"Articles of agreement made this first day of April, A. D. 1890, between Rollin Amsden of the first part and John Atwood of the second part and both of Windsor, in the state of Vermont, witnesseth:

"That whereas said John Atwood has taken the place of Loring Atwood in a contract of indenture dated the 19th day of August, 1885, executed by and between Loring Atwood and the said Amsden, and whereas certain modifications and extensions of said contract or indenture have been mutually agreed upon by and between said Amsden and said John Atwood which it is deemed desirable to put in

writing; therefore, be it known that the said Amsden, for a valuable consideration, doth hereby extend the lease set forth in said contract or indenture of August 19th for the term of one year from the first day of November, A. D. 1891, at the option of the said John Atwood, provided he shall give to said Amsden notice in writing at least three months prior to November 1st, 1891, of the number of years for which he shall elect to hold and enjoy such extended term, and the said John Atwood in consideration of the foregoing doth hereby covenant and agree to and with the said Rollin Amsden that he will pay in equal quarterly instalments of one hundred nine and forty-four one hundredths dollars on the first days of January, April, July and October for such extended terms as the rent thereof, except so far as said rent may be reduced under the provisions of said indenture of August 19, 1885, and that he will in all respects fulfill all the contracts and agreements of the said Loring Atwood therein contained. It is further mutually agreed and covenanted that if the said John Atwood does not have logs so as to run his chair works from the first day of April to the first day of November, A. D. 1890, then the rent is to be reduced one-half for such time only between said dates as said shortage of stock may exist.

"Witness our hands and seals the day and year above written."

And defendant avers that said defendant entered into possession of said premises at the date of said last named contract and continued in the occupation and enjoyment and exercise of all the rights and privileges contained in said contracts until the 20th day of December, A. D. 1892, and during all that time manufacturing chair stock as aforesaid, making no option under the terms of the last named contract. The said plaintiff all that time recognizing the said defendant as occupying said premises agreeably to the terms, provisions and stipulations contained in said contracts, keeping and performing during all said time all the stipulations and agreements by him to be kept and performed contained in said contracts, including the stipulation to saw the defendant's logs as specified in said contracts,

and the defendant during all time last aforesaid faithfully kept and performed all the stipulations contained in said contract by him to be performed and kept, each party recognizing and being governed by the terms of said contracts ; and said defendant further avers that said plaintiff at said Windsor, to wit : On the 20th day of said December, 1892, the plaintiff not regarding his said contract wilfully and without cause, absolutely refused to keep and perform his agreements in said contracts specified, to wit. : The plaintiff absolutely refused to saw Atwood's logs as stipulated in said contracts and absolutely refused to allow the defendant to further occupy said premises agreeably to the terms of said contracts, whereby defendant was deprived of all useful or beneficial use or occupation of said premises, and was unable to further carry on his said business of manufacturing chair stock and was thereby deprived of divers great gains and profits which otherwise would have accrued to him from manufacturing said stock, and though defendant further avers that at the time of such wrongful refusals on, to wit. : the 20th and 26th days of said December, at said Windsor, he had a large amount of chair stock in the log, to wit. : forty cords in his mill yard ·specified in said contracts, which he was intending to manufacture into chair stock, and had already contracted for a large amount of logs, to wit. : two hundred cords suitable for chair stock ; that in consequence of the wrongful act of the plaintiff as aforesaid, the defendant was compelled to sell and did sell said forty cords of chair stock at a great loss, and was compelled at a great expense to draw and load the same in cars, and was forced to cancel his contract for logs as aforesaid ; the defendant further avers at the time of the wrongful actions of the plaintiff as aforesaid, the defendant had various orders and contracts for the delivery of stock, which by reason of the plaintiff's wrongful acts as aforesaid he was obliged to cancel or otherwise provide for ; that at the time of said wrongful acts of the plaintiff as aforesaid the defendant had a

large amount of machinery for the purpose of manufacturing chair stock on said premises, and a large force, to wit. : six men engaged in the manufacture of said chair stock therein ; that in consequence of said wrongful acts of the plaintiff as aforesaid, he was obliged to discharge the said workmen, and said machinery laid idle for a long time, and said defendant was thrown out of business and lost and was deprived of divers great gains and profits which otherwise would have accrued to him in the manufacture and sale of such stock ; all of which was to the damage of the defendant of one thousand dollars, which said sum so due and owing from the plaintiff to the said defendant though often requested to pay, the said plaintiff has refused and still does refuse to pay, which said sum of money so due and owing from the plaintiff to the defendant exceeds the amount due from the defendant to the plaintiff in his declaration mentioned, for which this suit is brought, and this the defendant is ready to verify, and thereupon out of the said sum of one thousand dollars so due and owing from the plaintiff to the defendant he, the defendant, is ready and willing, and hereby offers to set off and allow the plaintiff the full amount of the said debt in the plaintiff's declaration described, and the defendant further says that there is due to the defendant from the plaintiff from said sum of money, to wit. : The sum of one thousand dollars, and the sum of nine hundred and fifty dollars more than sufficient to satisfy the debt due the plaintiff in said declaration mentioned which last named sum by virtue of the statute in such case made and provided, the defendant claims and demands to recover of the plaintiff in this suit.

*Gilbert A. Davis* and *W. B. C. Stickney* for the plaintiff.

The oral agreement that the defendant should continue as a tenant from year to year created a tenancy at will.

*Silsby* v. *Allen*, 43 Vt. 174; *Burton* v. *Wainwright*, 22 Vt. 88; *Hacket* v. *Whitney*, 2 Aik. 250; *Hall* v. *Wordsworth*, 28 Vt. 410.

No logs were ever tendered to the plaintiff at his mill to be sawed on or after December 20th and the plaintiff was under no duty to saw unless logs were so tendered. *Clark* v. *Baker*, 11 Met. 186; *Wilder* v. *St. John. & Lake Champlain R. R. Co.*, 66 Vt. 636; *Merriman* v. *The Hartford & New Haven R. R. Co.*, 20 Conn. 354; *Gardner* v. *Carson*, 15 Mass. 500; *Dana* v. *King*, 2 Pick. 155; *Hunt* v. *Livermore*, 5 Pick. 395; *Kane* v. *Hord*, 13 Pick. 281; *Green* v. *Reynolds*, 2 Johnson 207; *Collins* v. *Gibbs*, 2 Burrows 899; *Gayley* v. *Price*, 16 Johnson 267; *Morton* v. *Lamb*, 7 T. R. 125; *Swan* v. *Drury*, 22 Pick. 485.

*J. C. Enright* and *J. J. Wilson* for the defendant.

ROWELL, J.   As the facts now appear, the tenancy in question does not differ in legal quality from what it was as the facts appeared when the case was here before; 67 Vt. 239.   It then appeared that the defendant held over by constructive consent after the expiration of his lease for years, which holding was held to be a tenancy at will in its inception, but to have ripened into a tenancy from year to year, for that the plaintiff elected by taking rent to recognize the defendant as his tenant for a full year, and allowed him without objection to enter upon a second year.   Now it appears that the defendant continued in possession after the expiration of his said lease, under an oral agreement between the parties, made before its expiration, that he should occupy as a tenant from year to year under and according to the provisions and conditions of his written lease.   In other respects the facts appear in substance as they did before.   Under the statute, said oral agreement created a tenancy at will only, V. S. s. 2218.   It makes no difference whether the tenancy at will arose from a holding over by

constructive consent, or resulted from the express oral agreement found, for in either case it was equally a tenancy at will in its inception, and equally capable of ripening into a tenancy from year to year.

It is objected that the finding of the oral agreement is vitiated by the admission of oral testimony to support it. But if it is, on the ground that the Statute of Frauds is as applicable when rights resulting from and dependent upon the contract are sought to be enforced as when the contract itself is relied upon for recovery, yet the case would be the same, for there would still be a tenancy at will, resulting, as it appeared before, not from an express oral agreement, but from a holding over by constructive consent. This being so, the former decision that the tenancy at will had ripened into a tenancy from year to year must stand, for the court will not reconsider a decision made by it in the same case on a state of facts not different in legal effect. *Stacy* v. *Vermont Central R. R. Co.* 32 Vt. 551.

It is claimed that the defendant cannot stand on his declaration in offset, for that the first count declares upon the written agreement, whereas an oral agreement is found; and for that the second count declares upon an extension of the written agreement, which being found to have been done orally, brings the case within the Statute of Frauds. But although the first count recites the written agreements, which constituted the written lease between the parties, it does not count upon them as the cause of action, but upon a state of things to which said agreements are but inducement, alleged, in effect, to have taken place by tacit consent after the expiration of the written lease, which, as matter of law, it is claimed, continued obligatory upon the plaintiff, to and including the time of its alleged breach, the stipulation in the lease to saw the defendant's logs ; and if the legal result of the things alleged is as claimed, the finding of the oral agreement makes no difference, for the same result would follow without it.

The second count, to show that the stipulation to saw was obligatory on the plaintiff at the time of its alleged breach on December 20, 1892, alleges an extension of the written lease, with all its stipulations, for the term of one year from November 1, 1892, by mutual agreement of that date, and an entry by the defendant and occupancy thereunder until the time of the alleged breach. The agreement alleged was not proved, and if oral, was not provable under objection, as it would be within the Statute of Frauds; and if proved, it would not be effective to extend the lease a year, as it would create a tenancy at will only, and if it had been alleged to be oral, the count would be demurable. The defendant cannot, therefore, stand on this count under an oral agreement of the character alleged.

The original lease contained a stipulation that the plaintiff would saw the lessee's logs into lumber as desired at a price per hour to be agreed and indorsed on the lease, which should be less than the regular price. On April 1, 1890, which was before the expiration of the lease, the defendant took the place of the lessee, and by a paper writing of that date for that purpose, executed by the plaintiff and the defendant, the lease was somewhat modified and the term extended to November 1, 1891, with an option on the part of the defendant, which he declined to exercise, of a further extension. It is claimed that as the price agreed for sawing was never indorsed on the lease, no usage nor practice between the plaintiff and defendant before the making of the oral agreement found by the jury is of any force, and that the sawing done after November 1, 1891, was wholly outside and independent of the two written agreements, and that the defendant had no legal claim on the plaintiff to have any sawing done. But the things alleged in the first count to show the continuance in force of the stipulation to saw, are the things that were held before to have ripened the tenancy at will into a tenancy from year

to year, which last-mentioned tenancy is as effective to keep
that stipulation on foot without an indorsement of the agreed
price as was the agreement of April 1, 1890, which was
held to have extended the lease, with all its covenants, ex-
cept so far as they were thereby changed. The tenancy is
thus effective, because, when a tenant holds over without a
new agreement, and the landlord recognizes him as still his
tenant, the holding is taken to be on the terms and condi-
tions of the original lease. The same result would follow
if effect is given to the oral agreement found, for by that the
occupancy was to be under and according to the provisions
and conditions of the two written agreements. It follows,
therefore, that the stipulation in question was in force at the
time of its alleged breach, and the question arises whether
there was any evidence tending to show a breach, the court
below having ruled that there was none.

The testimony tended to show that on December 20 the
plaintiff refused to saw defendant's logs unless he would
comply with a request that he had no right to make and
with which the defendant refused to comply, and that at the
time, the defendant had logs on the log-way that he desired
to have sawed then, to the knowledge of the plaintiff; but he
did not actually tender any logs at the saw, nor formally
request that the sawing be done. It is claimed that each
party was to perform at the same time, and that the defen-
dant must have actually brought and tendered logs at the
saw before it was the duty of the plaintiff to saw them. But
such is not the law. When concurrent acts in the nature of
mutual conditions precedent are to be performed, readiness
and willingness to perform on the part of one party is suf-
ficient to impose the duty of performance on the other party.
This doctrine is so well stated in *Smith* v. *Lewis*, 26 Conn.
110, that we quote from the opinion of the Chief Justice in
that case :

"Some misapprehension or confusion appears to have

arisen from the mode of expression used in the books in treating of the necessity of a tender or offer by the parties as applicable to the case of mutual and concurrent promises. The word *tender*, as used in such a connection, does not mean the same kind of offer as when it is used in reference to the payment or offer to pay an ordinary debt due in money, when the money is offered to a creditor who is entitled to receive it and nothing further remains to be done and the transaction is completed and ended; but it means only a readiness and willingness, accompanied with an ability, on the part of one of the parties, to do the act that the agreement requires him to perform, provided the other will concurrently do the things that he is required by it to do, and a notice by the former to the latter of such readiness. Such readiness, ability, and notice are sufficient evidence of, and indeed imply, an offer or a tender in the sense in which those terms are used in reference to the kind of agreements we are now considering. It is not an absolute, unconditional offer to do or transfer anything at all events, but it is in its nature conditional only, and dependent on, and to be performed only in case of, the readiness of the other party to perform his part of the agreement."

In *Morton* v. *Lamb*, 1 H. Bl. 125, Grose, J., says it is difficult to reconcile all the cases on the subject, but that the good sense to be extracted from them all is, that if one party covenants to do one thing in consideration of the other party's doing another, each must be ready to perform his part of the contract at the time he charges the other with non-performance. The same doctrine is stated in *Swan* v. *Drury*, 22 Pick. 485, and in *Smith* v. *Lewis*, 24 Conn. 624, 63 Am. Dec. 180, and aptly illustrated by the case of *Cort* v. *Ambergate &c. Railway Co.* 17 C. B. 17, which was for the breach of a contract to manufacture and supply goods of a special kind, to be delivered in certain quantities monthly, and the buyer, after accepting a portion of the goods, gave notice to the seller that it had no occasion for more and would not accept nor pay for them; and it was held that the seller might claim for a breach of contract

without manufacturing and tendering the rest of the goods. From this case we deduce the principle that the promisee may treat a renunciation made in the course of performance as a discharge from further performance on his part, and thereupon bring an action, although such performance would otherwise be a condition precedent to the liability of the promisor. And this proposition is sustained by the cases generally. *Derby* v. *Johnson*, 21 Vt. 17; *Dugan* v. *Anderson*, 36 Md. 567, 11 Am. Rep. 509; *Parker* v. *Russell*, 133 Mass. 74. But if this is not a case in which concurrent acts in the nature of mutual conditions precedent were to be performed, but a case in which performance by the defendant was a condition precedent to performance by the plaintiff, yet actual performance by the defendant is not necessary, but that which is equivalent to performance or an excuse for non-performance is sufficient. 1 Chit. Pl. 326; Gould's Pl. Chap. IV, s. 13,

It is not necessary for present purposes to consider the effect of the plaintiff's notice to the defendant of December 26, and the latter's claimed action thereunder.

*Judgment reversed and cause remanded.*