2007 VT 105

# O'Brien Brothers' Partnership, LLP v. Wioletta Plociennik d/b/a Gourmet Art of Vermont

[940 A.2d 692]

No. 06-125

Present: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Cashman, D.J., Specially Assigned.

Opinion Filed September 28, 2007

---

*Heather Rider Hammond* of *Gravel and Shea*, Burlington, for Plaintiff-Appellee.

*Gary W. Lange* of *Swanson & Lange, LLP*, Burlington, for Defendant-Appellant.

¶ 1. **Dooley, J.** Defendant, Wioletta Plociennik, appeals a declaratory judgment that she is liable under a personal guaranty to plaintiff, O'Brien Brothers' Partnership, LLP, for the lease obligation of Leroy Arts and Products, Inc. ("Leroy").[*] Defendant contends that the personal guaranty accompanying the original lease agreement did not apply to the subsequent lease agreements. We agree and reverse.

¶ 2. On April 7, 1999, defendant, in her capacity as president of Leroy, signed a two-year lease with plaintiff for a building of 15,400 square feet. By its terms, the lease commenced on May 1, 1999 and ended on April 30, 2001. It contained no provision for the extension or renewal of the lease term, and section 24 of the lease specified that "[t]his lease contains the entire agreement between the parties and cannot be changed or terminated except by a written instrument subsequently executed by the parties hereto." It was signed by defendant as the authorized agent of Leroy.

¶ 3. In addition to the lease, defendant signed a personal guaranty to pay plaintiff "the monthly terms as agreed to in an executed lease dated 4-7-99 between [Leroy] (Lessee) and O'Brien Brothers Partnership (Lessor), the terms and conditions as set forth in said lease." The personal guaranty was not incorporated into the original lease, but was a separate document entitled "Addendum Number 1, Personal Guarantee."

¶ 4. On March 24, 2001, the parties signed another two-year lease agreement entitled "Amendment #2 Lease Renewal Agreement." The 2001 agreement amended some of the terms of the lease to extend the lease from May 2001 through April 2003, increase the space being rented and set new rent and common area maintenance amounts. Defendant signed the agreement as duly authorized agent for Leroy. The guaranty was not amended, nor was a new guaranty signed.

¶ 5. On May 6, 2003, the parties executed "Amendment #3 Lease Renewal Agreement," for the same space until April 2005. This agreement further increased the rent. Again, defendant signed as duly authorized agent of Leroy. Again, there was no modification of the original guaranty, and no new guaranty was signed.

---

[*] Until July 2004, the corporation was named Gourmet Art of Vermont, but for the purposes of consistency, we refer to it as Leroy even when discussing events before the name change.

¶ 6. Starting in January 2004, Leroy began to miss a significant number of rent payments. On August 12, 2004, during a meeting with plaintiff's representatives to address its concerns over Leroy's failure to pay rent, defendant stated that she was able to pay and presented her bank account balance and an appraisal of her residence. On August 30, 2004, defendant stated through her accountant that she was no longer bound by the terms of the personal guaranty, and plaintiff filed suit on September 27, 2004.

¶ 7. The sole issue before the superior court was whether the personal guaranty covered the duration of the third lease agreement, specifically May 2003 to April 2005. The parties disagreed about whether the second and third lease agreements were new leases or simply extensions of the original lease and whether the personal guaranty applied to those subsequent agreements. Plaintiff claimed that the personal guaranty signed in 1999 applied to the original lease as well as the two subsequent lease extensions and, therefore, defendant was personally liable for Leroy's failure to pay rent in accordance with the third lease. Defendant claimed that the personal guaranty was limited by its terms to the original two-year period from April 1999 to April 2001 and did not apply to the second or third leases.

¶ 8. The superior court concluded that defendant was liable under the terms of the personal guaranty for two reasons. First, the court found the language of the guaranty ambiguous because it could be read to apply exclusively to the lease executed on April 7, 1999, or, alternatively, it could be read to apply to both the original lease and the subsequent lease agreements. Turning to parol evidence, the court determined that the parties intended that the personal guaranty would bind defendant to the original lease as well as the subsequent agreements. In reaching this conclusion, the court focused on plaintiff's practice of obtaining leases from tenants who were not national companies, Leroy's frequent late payments during the first and second lease terms, defendant's failure to renounce the personal guaranty when she signed the second and third agreements, and defendant's statements at the meeting on August 12, 2004. Second, relying on authority from other jurisdictions, the court concluded that defendant consented to an extension of the personal guaranty because she obtained the lease extensions on behalf of Leroy. On appeal, defendant claims: (1) the superior court erred in allowing parol evidence because the language of the guaranty was unam-

biguous in that it applied only to the original lease, and (2) defendant's participation in negotiating and executing the new leases was insufficient, as a matter of law, to justify a finding that she personally consented to an extension of her obligations under the personal guaranty.

■ ■ ¶ 9. We begin with defendant's argument that the superior court erred in concluding that the language of the personal guaranty was ambiguous and in admitting and relying upon parol evidence to determine the intent of the parties. A contract term is ambiguous if "reasonable people could differ as to its interpretation." *Trs. of Net Realty Holding Trust v. AVCO Fin. Servs. of Barre, Inc.*, 144 Vt. 243, 248, 476 A.2d 530, 533 (1984). The question of whether the language of a contract is ambiguous is a matter of law, which we review de novo. *Downtown Barre Dev. v. C & S Wholesale Grocers, Inc.*, 2004 VT 47, ¶ 8, 177 Vt. 70, 857 A.2d 263. The interpretation of an unambiguous contract is also a question of law, which we review de novo. *Morrisseau v. Fayette*, 164 Vt. 358, 366, 670 A.2d 820, 826 (1995). Although some evidence regarding the circumstances surrounding the making of a contract may be considered by the court to determine whether the provisions are ambiguous, *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 578-79, 556 A.2d 81, 84 (1988), "those circumstances 'may not be used to vary the terms of an unambiguous writing.'" *Downtown Barre Dev.*, 2004 VT 47, ¶ 8 (quoting *Kipp v. Chips Estate*, 169 Vt. 102, 107, 732 A.2d 127, 131 (1999)). If the terms of the contract are plain and unambiguous, "they will be given effect and enforced in accordance with their language." *KPC Corp. v. Book Press, Inc.*, 161 Vt. 145, 150, 636 A.2d 325, 328 (1993).

■ ¶ 10. We conclude that the language of the personal guaranty is unambiguous. The terms of the personal guaranty read as follows:

> Wioletta E. Plociennik, grantor, absolutely and unconditionally guarantees and promises to pay to O'Brien Brothers Partnership (Lessor) or [its] order the monthly terms as agreed to in an executed lease dated 4-7-99 between [Leroy] (Lessee) and O'Brien Brothers Partnership (Lessor), the terms and conditions as set forth in said lease.

The language of the personal guaranty clearly states that it applies to the "executed lease dated 4-7-99" and that the promise

is in accordance with the "terms and conditions" in that lease. Nothing in either the lease or the personal guaranty speaks of possible modifications, renewals or extensions of the lease obligations. Thus, the plain language of the guaranty unambiguously binds defendant personally to the required rental payments between April 1999 and April 2001, but does not continue the obligation beyond those required payments.

■ ¶ 11. Without pointing to any other language, the trial court found ambiguity because the lease could be read "to include the lease as subsequently amended and extended by the parties." Such a reading expands the guarantor's obligation beyond what the language supports. This expansion of the obligation is particularly inappropriate because the obligation of the guarantor must be strictly interpreted in favor of the guarantor. See *Stern v. Sawyer*, 78 Vt. 5, 11, 61 A. 36, 38 (1905) ("Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract." (citation and quotation omitted)); *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 434 (Mo. 2003) ("[T]he liability of a guarantor is to be strictly construed according to the terms of the guaranty agreement and may not be extended by implication beyond the strict letter of the obligation."); *White Rose Food v. Saleh*, 788 N.E.2d 602, 603 (N.Y. 2003) ("A guaranty is to be interpreted in the strictest manner.").

■ ¶ 12. We recognize that some decisions from courts in other jurisdictions have held that the guarantor remains liable for lease payments under lease extensions in similar circumstances. See, e.g., *Handy Boat Service, Inc. v. Prof'l Servs., Inc.*, 1998 ME 134, ¶ 9, 711 A.2d 1306; see generally C.D. Sumner, Annot., *Liability of Lessee's Guarantor or Surety Beyond the Original Period Fixed by Lease*, 10 A.L.R.3d 582, § 3[a] (1966). In general, however, these decisions depend on language in the lease or the guaranty that is missing here. See *Handy Boat Service, Inc.*, 1998 ME 134, ¶ 8 (relying on lease language providing the option to extend the lease period). We conclude, consistent with numerous jurisdictions, that the better reasoned view is that a guaranty for a specific term does not apply to extensions or renewals of the lease unless the continuing obligation of the guarantor is expressly stated either in the personal guaranty, the original lease, or the subsequent lease agreements. See *Westcor Co. v. Pickering*, 794

P.2d 154, 157 (Ariz. Ct. App. 1990) (adopting rule that "for a guarantee of the performance of a written lease for a specific term to continue into a successive term, the 'express terms' of the lease must show that it is of a continuing nature"); *Jamieson-Chippewa Inv. Co. v. McClintock*, 996 S.W.2d 84, 89 (Mo. Ct. App. 1999) (holding that "the language of a lease guaranty, or else the underlying lease agreement to which it is collateral, must expressly indicate the intention of the parties that the guaranty continue in order to hold the guarantor liable" for the lease extensions); *Yearling Props., Inc. v. Tedder*, 557 N.E.2d 1231, 1233-34 (Ohio Ct. App. 1988) (holding guarantor's obligation did not extend to lease period after original term because lessor did not clearly state the continuing nature of obligation in lease agreement).

¶ 13. The trial court's decision concludes that it is a reasonable interpretation of the guaranty and lease that they create a continuing guaranty, one that extends for an indefinite period. See *Ricketson v. Lizotte*, 90 Vt. 386, 390, 98 A. 801, 802 (1916) (defining a "continuing guaranty [as] one which is not limited to a single transaction, but which contemplates a future course of dealing covering a series of transactions, as to which the guarantor has not bound himself for a definite period"). To the contrary, the language of the personal guaranty expressly bound the obligation of the guarantor to a single lease. The language of the 1999 lease clearly specifies that "[t]he term of the lease is years commencing on May 1, 1999 and ending on April 30, 2001." Consistent with the strict construction of the guarantor's obligation, we cannot turn the guaranty of a single lease transaction into a continuing guaranty applicable to any future extensions of the term of the lease. See *Jamieson-Chippewa Inv.*, 996 S.W.2d at 90; cf. *Cheshire Beef Co. v. Thrall*, 72 Vt. 9, 11, 47 A. 160, 161 (1899) ("[O]ne who becomes a guarantor without valuable consideration should not be subjected to an increased liability by legal implication, . . . the burden should be upon the one who desires a continuing guaranty to see that the language employed is sufficient to indicate it.").

¶ 14. Plaintiff argues that there is contract language to support the superior court decision when the guaranty is read in conjunction with the lease agreement. Plaintiff points out that the personal guaranty binds defendant to "the terms and conditions as set forth" in the 1999 lease, and that section 24 of the lease

allowed for the lease's renewal or extension by a subsequent writing executed by the parties. Section 24 states that the lease "cannot be changed or terminated except by a written instrument subsequently executed by the parties thereto." Plaintiff stresses that the superior court found that the 2001 and 2003 leases are simply extensions of the same lease, and argues that the language of the personal guaranty may be read, based on section 24, to include the lease as subsequently amended and extended by the parties.

■ ¶ 15. It is true that when two instruments dealing with the same subject matter are executed at the same time by the same parties, the agreements should be construed together. *Wing v. Cooper*, 37 Vt. 169, 178 (1864); see also 11 R. Lord, Williston on Contracts § 30:25, at 232-33 (4th ed. 1999) ("Generally, all writings which are part of the same transaction are interpreted together."); M. Friedman & P. Randolph, Jr., Friedman on Leases 35:1 (5th ed. 2004) ("Where the guaranty and lease are made simultaneously, both are construed as one instrument."). We disagree, however, that the language governing the alteration of the original lease can be read to create an ambiguity.

■ ¶ 16. Section 24 gives no additional powers to modify the lease but instead specifies that any modification must occur by written instrument, a requirement already imposed by the Statute of Frauds. See 12 V.S.A. § 181(5); 27 V.S.A. § 302; *Amsden v. Atwood*, 68 Vt. 322, 332-33, 35 A. 311, 314-15 (1895) (oral agreement to extend a lease is invalid because it violates the Statute of Frauds). As a result, it is simply a statement of Vermont law that adds nothing to the powers and duties of the parties. It cannot suffice as language that creates a reasonable interpretation that the term of the original lease extends beyond two years or that the guaranty continues beyond the term of the original lease. It does not create ambiguity that does not otherwise exist.

¶ 17. Without express language in the personal guaranty or the original lease that extended defendant's liability to any subsequent extensions or renewals, we hold that the personal guaranty and lease agreement are unambiguous and apply only to the original lease term from April 1999 to April 2001. Accordingly, the superior court erred in admitting parol evidence, including defendant's statements regarding her ability to personally cover the obliga-

tions of the lease extensions. See *Net Realty Holding Trust*, 144 Vt. at 249, 476 A.2d at 533 ("Only if the provision is found to be ambiguous may extrinsic evidence be used to aid the trier of fact."). Therefore, the court erred in relying on parol evidence to find that defendant is personally liable for the terms of the subsequent leases.

¶ 18. The superior court found a second ground to hold defendant liable under the guaranty: that defendant's participation as a corporate officer in negotiating and executing the new leases was sufficient, as a matter of law, to find that she personally consented to an extension of her obligations under the personal guaranty. The reasoning of the court was as follows:

> Consent may be express, or it may be implied from the conduct of the guarantor. Plaintiff has cited a substantial line of cases in which officers and other principals of a corporation remain liable on their personal guarantee when they consent to the extension of the lease even without a corresponding amendment to the terms of their guarantee. Under this line of authority, the guarantor is estopped from claiming that the guarantee is no longer in force because he or she obtained the extension and benefitted personally from the change.

We consider the authorities that the court referenced below. To the extent that they support the action of the superior court, we reject them.

■ ¶ 19. As a general proposition, when the underlying contract for the principal obligation is modified or altered without the guarantor's consent, the guarantor is released from its obligation. See *Stern*, 78 Vt. at 11, 61 A. at 38 ("[The guarantor] has a right to stand upon the very terms of his contract, and if he does not assent to any variation of it, and a variation is made, it is fatal." (citation and quotation omitted)); Restatement First of Security § 128 (1941). The court found, however, that defendant's signature as agent for the corporation was sufficient to show that she individually consented to the increased liability.

■ ¶ 20. When a corporate officer signs a contract in the officer's official capacity, the officer is ordinarily not individually responsible for the debts of the corporation. See *Hardwick-Morrison Co. v. Albertsson*, 158 Vt. 145, 149, 605 A.2d 529, 531 (1992) ("It is

axiomatic that the shareholders, officers, and directors of a corporation ordinarily are not liable for its debts."); *Costa v. Katsanos*, 163 Vt. 586, 588-89, 664 A.2d 251, 252-53 (1995) (holding that corporate officers who signed lease in official capacity were not individually liable for damages caused by the corporation holding-over after the lease term). The superior court's holding is at variance with this principle.

¶ 21. The authority to which the court referred is primarily two decisions of the North Carolina Court of Appeals, led by the decision in *Devereux Properties, Inc. v. BBM & W, Inc.*, 442 S.E.2d 555 (N.C. Ct. App. 1994). While plaintiff has cited cases from a number of jurisdictions, none of the others go far enough to support the application of the consent theory in this case.

¶ 22. *Devereux Properties* is factually similar to this case, although the guaranty in that case explicitly applied to extensions and renewals of the original lease. The court noted the general rule that the guarantor is not liable for obligations assumed by the tenant in alterations in the lease if the alterations "increase the guarantor's risk." *Id.* at 556. It also noted that the guarantor can consent to the alterations and the consent can be expressed or implied. It then held that "[c]onsent to an increase in liability may be implied from a guarantor's actions as a corporate officer." *Id.* at 557. It announced the following rule: "[W]e hold that defendants are estopped from denying responsibility for the modifications. Defendants were not innocent third parties; they were experienced businessmen who stood to benefit from the modifications." *Id.*; see also *Sherwin-Williams Co. v. ASBN, Inc.*, 550 S.E.2d 527, 530 (N.C. Ct. App. 2001), *after remand*, 594 S.E.2d 135 (N.C. Ct. App. 2004).

¶ 23. While the North Carolina rule is a creative mixture of theories of implied consent and estoppel, we decline to adopt it in this case. The parties in this case are business persons who can protect their interests through appropriate contractual language. The controversy arises because the commercial landlord who has extensive rental-property holdings failed to obtain a written extension of defendant's guaranty obligation when the lease was extended, an omission that is particularly glaring because the landlord drafted all the applicable documents. In this context, we view the law less as protecting innocent parties and more as applying traditional principles of contract construction. We prefer not to distort concepts of consent or estoppel to reach a particular result.

¶ 24. Defendant signed the subsequent leases in her official capacity as corporate president of Leroy, not in her individual capacity. Under the recognized separation of the individual and corporate roles of an officer, defendant's corporate signature on the subsequent leases does not establish her consent to pay the debts of the corporation. Thus, we decline to hold that a corporate officer, who signs in her role as a duly authorized agent of the corporation, consents as a matter of law to the extension of personal liability by executing a subsequent lease when the terms of the personal guaranty or the lease do not expressly provide for that extension. This conclusion is in keeping with the requirement that a guarantor's obligation must be strictly interpreted; when a lessor wishes to extend liability under a personal guaranty to subsequent leases or extensions, it must do so explicitly.

¶ 25. Moreover, we agree with defendant that the facts of this case do not meet the requirements for estoppel in Vermont. See *Lodge at Bolton Valley Condo. Ass'n v. Hamilton*, 2006 VT 41, ¶ 8, 180 Vt. 497, 905 A.2d 611 (mem.) (noting that to invoke equitable estoppel a party must show: "(1) that the party to be estopped knew the facts; (2) that the party being estopped intended that its conduct would be acted upon; (3) that the party asserting estoppel was ignorant of the true facts; and (4) that the party asserting estoppel detrimentally relied on the other party's conduct."). Defendant did not affirmatively lead plaintiff to believe that the personal guaranty applied to either of the lease extensions at the time they were signed. To the extent that she made any statements regarding her possible individual liability, they occurred long after all the documents were signed and too late for plaintiff to have relied on them to its detriment. See *id.* ("The doctrine of equitable estoppel seeks to promote fair dealing and good faith by preventing one party from asserting rights which may have existed against another party who in good faith has changed his or her position in reliance upon earlier representations."). Plaintiff has no claim that it was ignorant of the true facts and that it relied upon defendant's representation of those facts.

¶ 26. Finally, plaintiff argues that defendant must be estopped on the grounds of acquiescence. See *Sweezey v. Neel*, 2006 VT 38, ¶ 10, 179 Vt. 507, 904 A.2d 1050 ("If the actions of

the dominant estate's owner indicate acquiescence to an easement's changed location, the dominant estate is equitably estopped from claiming an entitlement to the former location."). Plaintiff raises this issue for the first time on appeal, however, and we therefore decline to consider the merits of this assertion. See *Adams v. Adams*, 2005 VT 4, ¶ 15, 177 Vt. 448, 869 A.2d 124 ("Failure to raise an issue before the trial court precludes raising it on appeal." (citation omitted)).

¶ 27. We conclude, therefore, that the personal guaranty unambiguously applied only to the original lease agreement and not to any extensions. Further, we reverse the superior court's ruling that defendant's corporate signature was sufficient, as a matter of law, to extend personal liability for the nonperformance of the subsequent leases. We remand for entry of judgment for defendant.

*Reversed and remanded for proceedings consistent with this opinion.*