MFW Associates, LLC v. Snowdance, LLC, No. 175-3-08 Wrcv (Cohen, J., Nov. 24, 2010)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT                                                CIVIL DIVISION

Windsor County                                                Docket No. 175-3-08 Wrcv

MFW Associates, LLC
     Plaintiff

v.

Snowdance, LLC d/b/a Ascutney Mountain Resort,
Snowdance Realty Co., Snowdance Ski Co.,
Snowdance Hotel Co., Steven Plausteiner,
Susan Plausteiner, Richard Frary, Joel Mael,
and Textron Financial Corporation
     Defendants


## DECISION RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT

Defendant Snowdance LLC is the operator of the Ascutney Mountain Resort.  Defendant has defaulted on its obligations to plaintiff MFW Associates LLC in an amount exceeding $1.8 million dollars, and the parties have already agreed that plaintiff is entitled to a commercially reasonable sale of the collateral: the membership interests in Snowdance LLC that were owned by defendants Steven Plausteiner, Susan Plausteiner, Snowdance Realty Co., Snowdance Ski Co., and Snowdance Hotel Co.  The remaining question presented by the cross-motions for summary judgment is whether the collateral pledge agreements were non-recourse, or whether plaintiff is instead entitled to seek a deficiency judgment against the three Snowdance companies.

The following background facts are helpful to an understanding of the dispute.  In 2005, Snowdance LLC borrowed approximately $4.5 million dollars from PRIF Ascutney LLC.  Among other collateral, the loan was secured by mortgages given on most of the real estate comprising the ski resort as well as the buildings, improvements, and fixtures thereon.  A series of defaults followed, however, and Snowdance LLC was placed in the position of selling assets in order to pay down the loan, and giving certain deeds in lieu of foreclosure.  Despite the forbearances and the restructured payment terms, the defaults continued.  Eventually, PRIF Ascutney sold the promissory note to MFW Associates for approximately $850,000.

Snowdance LLC then negotiated another forbearance agreement with MFW Associates, and it is the terms of this October 2008 agreement that are at the heart of the present dispute.  At a minimum, the parties agree that, as additional security for the loan, the Plausteiners and the three Snowdance companies all agreed to pledge their membership interests in Snowdance LLC to plaintiff in the event of a default.  Beyond this, the parties sharply dispute whether they intended for the pledge agreements to be non-recourse, or in other words, whether they intended for Snowdance Realty Co.,

Snowdance Hotel Co., and Snowdance Ski Co. to assume joint and several liability for the entire amount of the loan as guarantors.

In resolving the present cross-motions for summary judgment, the role of the court is to determine whether the contract documents unambiguously establish whether the three Snowdance companies are jointly and severally liable for the entire amount of the loan.

As a general rule, the ultimate goal of contract interpretation is to implement the intent of the parties. If the parties have reduced their agreement to writing, and the terms of the writing are unambiguous, then the court assumes that the intent of the parties is reflected in the plain language of the contract, and no further inquiry is necessary. Dep't of Corrections v. Matrix Health Systems, P.C., 2008 VT 32, ¶ 12, 183 Vt. 348. If the contract terms are ambiguous, however, then the intent of the parties becomes a question of fact to be determined at trial based on all the evidence in the case, including the testimony of the parties. John A. Russell Corp. v. Bohlig, 170 Vt. 12, 16 (1999). An ambiguity exists when "a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable." Isbrandtsen v. N. Branch Corp., 150 Vt. 575, 579 (1988). In determining whether an ambiguity exists, the court may consider evidence regarding the circumstances surrounding the making of a contract, but those circumstances may not be used to vary the terms of an unambiguous writing. O'Brien Bros. Partnership, LLP v. Plociennik, 2007 VT 105, ¶ 9, 182 Vt. 409.

In addition to the general rules of contract interpretation, there are two other substantive rules that are relevant to the present dispute. One of those rules is that, unless the parties specifically provide otherwise in their written agreements, a secured creditor is entitled to seek a deficiency judgment when the underlying obligation is not satisfied by a commercially reasonable sale of the collateral. 9A V.S.A. § 9-608(a)(4). On the other hand, there is also the long-standing and well-established principle that guaranties are to be "strictly interpreted in favor of the guarantor" so as not to extend personal liability "by implication beyond the terms of a contract." Plociennik, 2007 VT 105, ¶ 11. As discussed below, these rules are in tension here.

The contracts involved here run into the hundreds of pages, but the essence of the dispute can be distilled to two separate provisions: the payment terms of the October 2008 forbearance agreement, and the remedy terms of the individual pledge agreements.

The payment term of the forbearance agreement provides that the "[d]ebtor shall pay to the lender" the amount of $850,000 by a specified date. The term "debtor" is then defined in the introductory paragraph of the agreement to include the "borrower" Snowdance LLC and the "pledgors" Steven Plausteiner, Susan Plausteiner, Snowdance Realty Co., Snowdance Hotel Co., and Snowdance Ski Co. On first glance, then, the forbearance agreement seems to establish that each debtor bears at least some responsibility for repayment. But the forbearance agreements do not further specify whether the pledgors are jointly and severally for the entire amount of the loan, or

2

whether their obligation is instead limited to the collateral identified in the separate pledge agreements.[1]

The individual pledge agreements do not answer that question. The agreements do describe each pledgor as the "guarantor" of the loan, but they do not say whether the pledgor has agreed to guarantee the entire amount of the loan or whether the guarantee is limited to the value of the pledged membership interest. And while the remedies listed in section 8 of the pledge agreements do not necessarily exclude the possibility that the creditor could seek a deficiency judgment following the transfer of the collateral (see also § 14 of the pledge agreement, providing that the remedies stated therein were not cumulative or exclusive), it is also evident from the pledge agreement that the parties were primarily contemplating a pledge of the collateral as the security for the pledgor's obligations under the loan. If the parties meant for the pledgor to be liable for the entire amount of the loan, that intent is not obvious from the text of the pledge agreements, and must instead be inferred by the absence of any statements expressly to the contrary.

As a result, the court is left with the aforementioned tension: the contracts do not expressly preclude the possibility of a deficiency judgment, but in order to find that the pledgors are jointly and severally liable for the entire amount of the loan, the court must draw inferences about the scope of the guaranty.

If any further evidence is needed to support the conclusion that the contracts are ambiguous, there is the affidavit from Steven Plausteiner that was submitted as part of the summary-judgment record. His testimony was that the parties specifically discussed personal liability during the negotiations leading up to the October 2008 forbearance agreement, and that they specifically agreed that the pledge agreements would be non-recourse. This testimony, when considered along with the aforementioned contract language, is enough to persuade the court that the readings offered by plaintiff and defendants are both reasonable, and that the intent of the parties in this case is a question of fact to be determined at trial.

Defendants have separately moved for summary judgment on the ground that they have no personal liability as a matter of law because the forbearance agreement does not include the notice required by 9 V.S.A. § 102. That section explains that if a lender requires the signature of an obligor jointly and severally, then the instrument evidencing

---

[1] Complicating this analysis further is the fact that the forbearance agreement released personal guaranties that had earlier been given by the Plausteiners. On the one hand, as plaintiff argues, the releases do show that the parties knew how to draft specific releases from liability and could have expressly limited the liability of the Snowdance companies if that was their intent. On the other hand, it does not make sense to release the personal guaranties if plaintiff's interpretation of the contract—that each pledgor is jointly and severally liable for the entire amount of the loan—is correct. The release of the guaranty would be an empty gesture under that interpretation, for the Plausteiners would still remain severally liable for the entire amount of the loan in their individual capacities.

It also bears observation that the parties apparently executed a separate personal guaranty with respect to the Plausteiners. If the parties had meant for each of the pledgors to be guarantors of the entire amount of the loan, therefore, it stands to reason that they would have executed a separate guaranty to that effect, rather than leaving the scope of the guaranty a matter of implication in the agreements.

the indebtedness must contain a specified warning to the effect that "your signature on this note means that you are equally liable for repayment of this loan," and that "[i]f the borrower does not pay, the lender has a legal right to collect from you." It has already been explained, however, that (1) the notice is required only for documents evidencing the indebtedness of co-signers, and not for documents evidencing the indebtedness of guarantors; and in any event, (2) there is no available remedy for failure to comply with the statutory notice requirement. <u>Vermont Development Credit Corp. v. Kitchel</u>, 149 Vt. 421, 429–30 (1988). As such, defendants are not entitled to summary judgment on this issue.

Given these conclusions, defendants' motion for supplemental briefing on the relationship between the intercreditor agreement and the deficiency-judgment issue is denied as moot. The parties may submit legal memoranda on the issue in advance of trial if they wish. Defendant Snowdance Realty Co.'s unopposed motion to substitute itself for defendant Textron Financial Corporation is granted.

Finally, the parties are requested to advise the court within five business days whether it remains necessary to schedule a hearing on the motion for writ of attachment in light of the recently-issued arbitration decision. If the parties advise the court that the issue remains live, they should advise the court how much time they need for presentation of the issues, and an evidentiary hearing shall be scheduled forthwith.

In the meantime, and until further order of the court, no party shall convey, encumber, or otherwise transfer the Garaventa high-speed quad chairlift that was the subject of the motion for writ of attachment. At the very least, the chairlift is essential to the operation of the ski resort, and the status quo must be maintained pending resolution of the various issues involved in this lawsuit.

**ORDER**

(1) Plaintiff's Motion for Summary Judgment (MPR #10), filed May 27, 2010, is ***denied***;

(2) Defendant's Cross-Motion for Summary Judgment (MPR #14), filed June 18, 2010, is ***denied***;

(3) Defendant's Motion to Substitute Snowdance Realty Company for Textron Financial Company (MPR #19), filed October 12, 2010, is ***granted***;

(4) Defendant's Motion to File Supplemental Pleading (MPR #20), filed October 12, 2010, is ***denied***;

(5) The parties are requested to advise the court within five business days whether it remains necessary to schedule a hearing on Plaintiff's Motion for Writ of Attachment

(MPR #14).  If the parties request a hearing, the court shall schedule an evidentiary hearing forthwith; and

(6) In the meantime, no party shall convey, encumber, or otherwise transfer the Garaventa high-speed quad chairlift that was the subject of the motion for writ of attachment.

Dated at Woodstock, Vermont this _____ day of _____, 2010.

_____
Hon. William D. Cohen
Superior Court Judge